No. 10-L-608

## IN THE CIRCUIT COURT
## THIRD JUDICIAL CIRCUIT
## MADISON COUNTY, ILLINOIS

JOHN STULL, RANDALL QUICK, LaSHONDA STIFF,   )
FAYE MORRISON, JEFF HARTMAN and   )
POLLY HARTMAN, JPH DEVELOPMENT, INC.,   )
a Missouri Corporation, wholly owned by JEFF HARTMAN and )
POLLY HARTMAN; COURTNEY SPEED,   )
KWAME THOMPSON, JORGE GONZALEZ,   )
NIKKY SHOTWELL and GRACE PERRY, Individually and   )
on Behalf of Similarly Situated Individuals;   )
   )
   Plaintiffs,   )
   )
   )
   vs.   )   No. 10-L-608
   )
YTB INTERNATIONAL, INC., A Delaware corporation;   )
YOURTRAVELBIZ.COM, a/k/a YTB.COM,   )
a Delaware Corporation;   )
YTB TRAVEL NETWORK, INC.,   )
A Delaware Corporation;   )
YTB TRAVEL NETWORK OF ILLINOIS, INC.,   )
an Illinois Corporation;   )
J. LLOYD TOMER, an individual;   )
J. SCOTT TOMER, an individual;   )
J. KIM SORENSEN, an individual;   )
ANDREW CAUTHEN, an individual; and,   )
MERIDIAN LAND COMPANY, an Illinois Corporation;   )
WINFIELD DEVELOPMENT, LLC, an Illinois Corporation;   )
CCMP, INC. D/B/A BERYLMARTIN;   )
TIMOTHY KAISER, M.D., an individual;   )
CLAY O. WINFIELD, an individual; and   )
ROBERT VAN PATTEN, an individual;   )
   )
   Defendants;   )
   )
   **And**   )
   )
**ARMSTRONG TEASDALE, LLP, a foreign corporation;**   )
**JAMES G. MARTIN;**   )
**JAY SUMMERVILLE; and**   )
**BRIAN EDWARD KAVENEY;**   )
   )
   **Respondents in Discovery.**   )

**FILED**

JUL 20 2010

CLERK OF CIRCUIT COURT #66
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

No. 10-L-608

**NEWLY ADDED RESPONDENTS IN DISCOVERY TO SERVE:**

**ARMSTRONG TEASDALE, LLP, a foreign corporation**
SERVE:      AT, INC., Registered Agent
                 7700 Forsyth Boulevard, Suite 1800
                 St. Louis, MO 63105

**JAMES G. MARTIN**
SERVE:      JAMES G. MARTIN or his designated representative
                 7700 Forsyth Boulevard, Suite 1800
                 St. Louis, MO 63105

**JAY SUMMERVILLE**
SERVE:      JAY SUMMERVILLE or his designated representative
                 7700 Forsyth Boulevard, Suite 1800
                 St. Louis, MO 63105

**BRIAN EDWARD KAVENEY**
SERVE:      BRIAN EDWARD KAVENEY or his designated representative
                 7700 Forsyth Boulevard, Suite 1800
                 St. Louis, MO 63105

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs John Stull, Randall Quick, LaShonda Stif, Faye Morrison, Jeff and Polly

Hartman, JPH Development, Inc., Courtney Speed, Kwame Thompson, Jorge Gonzalez, Nikky

Shotwell, Grace Perry, individually and on behalf of similarly situated individuals, and for their

Complaint against Defendants YTB International, Inc., YourTravelBiz.com, Inc., a/k/a

YTB.com, YTB Travel Network, Inc., YTB Network of Illinois, Inc., J. Lloyd "Coach" Tomer, J.

Scott Tomer, J. Kim Sorensen, Andrew Cauthen, Meridian Land Co., Winfield Development,

LLC, CCMP, Inc. d/b/a BerylMartin, Timothy Kaiser, M.D., Clay Winfield and Robert Van

Patten, state:

## I.   **INTRODUCTION**

1.      Defendants have perpetrated an illegal pyramid scheme that represents one of the largest frauds in the history of the State of Illinois.  Defendants have taken over half a billion dollars from their unsophisticated customers, selling them on the dream of cheap travel and million dollar pay-outs when the only way that Plaintiffs and their class could make a net profit was by recruiting others to join the illegal pyramid scheme.  While over half of the customers received no travel commissions at all, the officers and directors of YTB International, Inc. each paid themselves multi-million dollar salaries while also siphoning tens of millions of dollars from their publicly traded corporation to privately owned corporations that they owned and controlled.  Plaintiffs and their proposed class ask this Court to end Defendants' massive fraud and to enter a judgment that compensates them for the millions of dollars that Defendants swindled.

2.      This case involves the operation of an illegal pyramid sales scheme and chain referral sales technique in violation of numerous state consumer protections statutes, including the Illinois Consumer Fraud Act ("ICFA").  The YTB Defendants1 have generated hundreds of millions of dollars in net revenue—$162 million in 2008 alone—doing business as, or in affiliation with, entities commonly known as "YourTravelBiz" or "YTB".  YTB Defendants derived the lion's share of their revenue—$122 million in 2008 (75% or their net revenue)— by using Independent Marketing Representatives ("IMRs") to recruit Referring Travel Agents ("RTAs") to buy Online Travel Agencies ("OTAs") from YTB Defendants.  RTAs pay

approximately $450 up-front and $50 per month thereafter to own and operate their OTAs.

3.      IMRs receive "marketing commissions" if the persons they refer to YTB

Defendants buy OTAs, regardless of whether the OTAs generate any commissions from the sale

of travel.  IMRs receive marketing commissions on both referring persons to YTB Defendants to

buy OTAs and from OTAs sold "downline."  Downline OTA sales are OTAs sold by the "first

generation" RTAs who the original IMR personally referred to YTB Defendants, and who

subsequently referred other persons to YTB Defendants for the purchase of OTAs.

4.      IMRs cannot reasonably expect to be effective salespersons of the OTAs upon

which their marketing commissions depend without becoming RTAs themselves (i.e., owning

and operating their own Travel Agencies).  Defendants provide further encouragement for IMRs

to become RTAs by offering to reimburse RTA fees to IMRs who sell a certain number of Travel

Agencies.  Accordingly, most, if not all, IMRs, including Plaintiffs, have also been RTAs.

5.      Moreover, a number of different corporations and individuals conspired with YTB

Defendants by taking actions that advanced the tortious and illegal pyramid scheme and chain

sales referral technique, thereby making tens of millions of dollars in profits.  Meridian Land Co.,

which is owned by YTB Directors Clay Winfield and Timothy Kaiser, M.D., advanced YTB

Defendants' illegal objectives by contracting to provide them with property for office space while

Winfield Development, LLC developed that property.  CCMP, Inc., an Indiana corporation for

which J. Kim Sorensen is the president, advanced YTB Defendants' objectives by providing

them with marketing materials and a 130 foot replica of the Statute of Liberty for YTB

---

1 See Paragraphs 20 through 28 of this First Amended Complaint.

No. 10-L-608

Defendants' 2008 convention in St. Louis, Missouri. These "Conspiracy Defendants" are liable

under Illinois common law because they knowingly and voluntarily took these actions that

advanced YTB Defendants' illegal objectives.

6. On behalf of themselves and other similarly situated IMRs/RTAs, Plaintiffs seek

to enjoin  YTB Defendants' illegal operations, recover the fees which they and other Class

Members paid, and obtain all other exemplary and punitive damages allowed by law.

II. **JURISDICTION AND VENUE**

7. This Court has jurisdiction over these proceedings under 735 ILCS 5/2-101 and

735 ILCS 5/2-102 because: Madison County, Illinois is the county of residence of one or more

Defendants; because part or all of the subject transactions occurred in Madison County, Illinois;

because one of more Defendants do business in Madison County, Illinois; and, because one or

more Defendants have an office in Madison County, Illinois.

8. This Court has jurisdiction over the Indiana corporation CCMP, Inc. under the

Illinois Long Arm Statute, 735 ILCS 5/2-209, because CCMP, Inc. transacted business in the

State of Illinois, because it performed contracts substantially connected to Illinois, and because it

conspired to commit tortious and illegal acts within this State.

        a. CCMP, Inc. purposefully directed its business activities at YTB
             Defendants, who are citizens of this District. CCMP, Inc. continuously
             and repeatedly did business in Illinois with YTB Defendants. All
             contracts between YTB Defendants and CCMP, Inc. were initiated,
             formed, negotiated and executed in the State of Illinois. CCMP, Inc.
             products were ordered from this State and delivered to this State, thereby
             completing performance of its contracts. Moreover, CCMP, Inc.
             continuously communicated with YTB Defendants who are located in
             Illinois.

No. 10-L-608

b.    CCMP, Inc.'s directors, who were located in the State of Illinois, controlled the operations of this company from this State. CCMP, Inc.'s directors made policy and business decisions from this State.

c.    CCMP, Inc. knowingly conspired with YTB Defendants to advance an illegal pyramid scheme and committed acts in furtherance of this scheme in the State of Illinois, including but not limited to providing YTB Defendants with the marketing materials necessary to operate its illegal pyramid scheme.

d.    By repeatedly transacting business in Illinois, CCMP, Inc. had purposefully availed itself to the laws and jurisdiction of this State.

## III.   PLAINTIFFS

### A.   "Illinois Plaintiffs"

9.    Plaintiff John Stull, an individual residing in Carbondale, Illinois and a citizen of the State of Illinois, was an IMR and a RTA from March, 2006 to August, 2008.

10.    Plaintiff Randall Quick, an individual residing in Edwardsville, Illinois and a citizen of the State of Illinois, was an IMR and an RTA until November, 2007.

11.    Plaintiff LaShonda Stiff, an individual residing in Alton, Illinois and a citizen of the State of Illinois, was an IMR and an RTA until June, 2008.

### B.   "Missouri Plaintiffs"

12.    Plaintiff Faye Morrison, an individual residing in St. Louis, Missouri and a citizen of the State of Missouri, was an IMR and a RTA from approximately October 2006 to September 2007.

13.    Plaintiffs Jeff and Polly Hartman, individuals residing in Chesterfield, Missouri and citizens of the state of Missouri, were RTAs and IMRs from approximately March, 2007

until August, 2008.

14.     Plaintiff JPH Development, Inc. is a Missouri corporation, wholly owned by Plaintiffs Jeff and Polly Hartman, with its principal place of business in Chesterfield, Missouri.

15.     Plaintiff Courtney Speed, an individual residing in St. Louis, Missouri and a citizen of the State of Missouri, was a RTA and an IMR from approximately December, 2007 until March, 2008.

**C.**     **"Georgia Plaintiffs"**

16.     Plaintiff Kwame Thompson is an individual residing in Atlanta, Georgia and a citizen of the State of Georgia who was an IMR and a RTA.

17.     Jorge Gonzalez is an individual residing in Douglassville, Georgia and a citizen of the State of Georgia who was an IMR and a RTA until December, 2008.

18.     Nikky Shotwell is an individual residing in Tucker, Georgia and a citizen of the State of Georgia who was an IMR and a RTA.

**D.**     **Utah Plaintiff**

19.     Plaintiff Grace Perry, an individual residing in Murray, Utah and a citizen of the State of Utah, was an RTA and IMR from June, 2008 until October, 2008.

**IV.**     **DEFENDANTS**

**A.**     **"YTB Defendants"**

20.     YTB International, Inc. is incorporated under the laws of the State of Delaware and has its principal place of business in Wood River, Illinois.

21.     YourTravelBiz.com, Inc. is incorporated under the laws of the State of Delaware

and has its principal place of business in Wood River, Illinois.

22.    YTB Travel Network, Inc. is incorporated under the laws of the State of Delaware and has its principal place of business in Wood River, Illinois.

23.    YTB Network of Illinois, Inc. is incorporated under the laws of the State of Illinois and has its principal place of business in Wood River, Illinois.

24.    J. Lloyd "Coach" Tomer is a founder of YTB International, Inc. as well as the Chairman of its Board, and is an Illinois citizen who resides in Edwardsville, Illinois.

25.    J. Scott Tomer is a founder of YTB International, Inc., as well as its chief executive officer, and is an Illinois citizen who resides in Edwardsville, Illinois.

26.    J. Kim Sorensen is a founder and president of YTB International, Inc., and also serves as the CEO of YTB Travel Network, Inc.  He is an Illinois citizen who resides in Edwardsville, Illinois.  Defendant Sorensen is also the principal and president of CCMP, Inc.

27.    Andrew Cauthen is the president and chief executive of YourTravelBiz.com, Inc., and is an Illinois citizen who resides in Edwardsville, Illinois.

28.    Robert Van Patten is the co-CEO of YTB International, Inc., and is an Illinois citizen who resides in Edwardsville, Illinois.

**B.    "Conspiracy Defendants"**

29.    Meridian Bank was a bank with its principal place of business in Eldred, Illinois. It was closed by the Illinois Department of Financial Professional Regulation-Division of Banking on or about October 10, 2008, and the Federal Deposit Insurance Corporation was named its receiver.  Although this paragraph is located under this "Conspiracy Defendants"

subsection, Plaintiffs have not named Meridian Bank as a defendant in this case.

30.     Winfield Development, LLC is an Illinois corporation with its principal place of business in Winfield, Illinois.

31.     Meridian Land Co. is an Illinois Corporation with its principal place of business in Edwardsville, Illinois.

32.     CCMP, Inc. is an Indiana corporation with its principal place of business in Griffith, Indiana.  It creates the marketing materials for YTB Defendants, and it does business under the assumed name BerylMartin.

33.     Timothy Kaiser, M.D., is a director and officer of YTB International, Inc.  He also is the president of Meridian Land Co., and was the chairman and principal shareholder of Meridian Bank.  He is a citizen of the State of Illinois.

34.     Clay Winfield is a director and officer of YTB International, Inc.  He also is a director and officer of both Meridian Land Co. and Winfield Development, LLC, and was also director and principal shareholder of Meridian Bank.  He is a citizen of the State of Illinois.

## V.     YTB DEFENDANTS' CORPORATE STRUCTURE AND BUSINESS FUNCTIONS

35.     Defendants YourTravelBiz.com, Inc. and YTB Travel Network, Inc. are wholly owned subsidiaries of YTB International, Inc.

36.     YTB International, Inc. is also the parent company of YTB Network of Illinois, Inc.

37.     YTB International, Inc. conducts business primarily through divisions operated by

No. 10-L-608

its subsidiary agents, including YourTravelBiz.com, Inc., YTB Travel Network, Inc. and YTB

Network of Illinois, Inc.

38.    YTB International, Inc.'s subsidiaries perform related functions organized as

follows:

      a.    YourTravelBiz.com, Inc. markets OTAs via the activities of IMRs; and,

      b.    YTB Travel Network, Inc., along with its subsidiary, YTB Network of
           Illinois, Inc., oversees travel-related services provided by or through
           RTAs.

39.    The wholly owned subsidiaries of YTB International, Inc., YourTravelBiz.com,

Inc. and YTB Travel Network, Inc., and their subsidiaries, all market their services together.

40.    On paper the wholly owned subsidiaries appear to have to have independent

purposes and functions; however, these entities operate as a single unit, profiting from each

other's business.

## VI.    YTB DEFENDANTS' SCHEME

41.    The crux of YTB Defendants' business scheme is the sale of what Defendants

called Online Travel Agencies ("OTAs"). While Defendants characterized the business

opportunity they sold Plaintiffs and their class as the right to be a YTB "travel agent," this

characterization is misleading because Plaintiffs and their class were not travel agents.  Plaintiffs

could not sell travel packages, process payments for travel customers, issue travel tickets or other

documents for travel customers, process travel refunds or receive travel commissions.2  Rather,

---

2 Plaintiffs' RTA contract reads in relevant part:
    Travel customers deal exclusively with YTBTN except as expressly
    directed and authorized in advance to RTA by YTBTN, and RTA may not:

Plaintiffs were the agents of travel agents who merely referred travel customers to YTB

Defendants.  In their role as RTAs, Plaintiffs and their proposed class sold neither products nor

services.

42.     The sales price for an OTA is a one-time fee of as much as $449.95 and a monthly

fee of $49.95 thereafter.  This money was paid for the right to earn "up to 60%" of the travel

commissions collected by YTB Defendants from travel vendors for the travel YTB Defendants

booked for the customers Plaintiffs referred.  YTB Defendants would set up and maintain an

OTA website for Plaintiffs, and Plaintiffs could choose the name for their OTAs as well as an

available domain name of their choice.  Each of those websites contained YTB Defendants'

travel search engine and the means by which the persons referred to that website could purchase

travel from YTB Defendants.

43.     By means of a portal on their OTA website, Plaintiffs could access information

concerning the travel customers they referred to YTB Defendants, the purchases by those travel

---

a. Receive travel customer credit card, cash or check payments or charge
a fee to any travel customer. (All travel customers deal directly,
whenever feasible to do so, including payment, with YTBTN or with the
travel providing vendor). RTA may not receive or process credit card
information; cash or check must come through YTBTN, cash in the form of
certified funds only.
b. Issue travel tickets or documents for any travel customer.
c. Process travel customer refunds.
d. Engage in the promotion or sale of non-YTBTN provided travel and/or
travel related services.  EXCEPTION: An RTA may be actively employed by
a non-internet based travel agency.
e. Utilize any non-YTBTN provided websites. No RTA website shall be
linked to any non-YTBTN website without the prior written consent of
YTBTN, which consent may be declined by YTBTN in its sole discretion.
Contact legalsupport@ytb.com.
f. Act in any manner, or assist other RTAs so to do, to cause pending
travel and travel related product and service orders to be cancelled or
to be transferred to a travel agency other than YTBTN.
g. Receive or net out travel commissions from or with a travel vendor.

customers and the portions of the travel commissions to which they had a contractual right.

Plaintiffs could also communicate with YTB Defendants by means of this interactive website.

44.     In 2007 alone, OTA sales and monthly fees accounted for 73%, or $103 million, of YTB Defendants' total revenue of $141 million.  Travel-related sales accounted for less than 10% of YTB Defendants' total revenues in 2007.  In 2008, YTB Defendants' net revenue amounted to $162 million, $122 million of which was from the sale and maintenance of OTAs. In 2008, only $27 million (17% of their revenue) was generated from travel commissions.

45.     YTB Defendants also paid Plaintiffs for referring to them persons who purchased OTAs.  In fact, the only way Plaintiffs and their class could make a net profit was by referring persons to YTB Defendants who purchased OTAs.  In their roles as IMRs, Plaintiffs did not sell OTAs or any other products or services.  All contracts pertaining to OTA sales were entered by YTB Defendants and the prospective RTAs.  Plaintiffs were not parties to these contracts and could not terminate the agreements.  In other words, Plaintiffs' roles as IMRs were similar to their roles as RTAs inasmuch as their sole function was referring customers to YTB Defendants.

46.     Plaintiffs were both RTAs and IMRs. While the purchasers of OTAs (i.e., RTAs) were technically referred to YTB Defendants by Independent Marketing Representatives (IMRs), most, if not all, IMRs were also RTAs.

47.     YTB Defendants provide incentives for IMRs to operate their own OTAs by offering to reimburse their maintenance fees under certain circumstances.  An IMR/RTA who referred three persons to YTB Defendants that purchased OTAs qualified for reimbursement of

his initial one-time RTA fee.  An IMR/RTA who sold six OTAs qualified for reimbursement of

his monthly RTA fee for every month during which the sold OTAs remained active.

48.     IMRs received "marketing commissions" based upon their referral of buyers of

OTAs to YTB Defendants. In addition to earning direct marketing commissions by personally

recruiting RTAs to buy OTAs, IMRs also earned marketing commissions based upon all

"downline" OTA referrals made either by the original IMR's recruits or by subsequent

generations of recruits.

49.     IMRs' payment of the OTA fees charged to RTAs is, as a practical matter,

necessary to become effective salespeople of the OTAs upon which marketing commissions are

based.

50.     The practical necessity for Plaintiffs and other IMRs to become RTAs is

attributable to one or more of the following circumstances:

      a.     An IMR cannot reasonably expect to successfully refer a potential buyer of
         an OTA to YTB Defendants (and thereby earn marketing commissions)
         without becoming an RTA by buying an OTA himself;

      b.     An IMR maximizes his marketing commissions by selling OTAs to as
         many RTAs as possible, thereby earning commissions on OTA sales by
         direct and subsequent generations of RTAs who also become IMRs; and

      c.     An IMR who is also an RTA may include his own OTA purchase for
         purposes of earning marketing commissions on certain downline OTA
         sales.

51.     YTB Defendants' contracts with all Plaintiffs and their Proposed Classes

contained choice-of-law and forum-selections clauses that provided that all litigation shall be

conduced in Illinois under Illinois law.

No. 10-L-608

## COUNT I – ILLINOIS CONSUMER FRAUD ACT - ILLEGAL PYRAMID SALES SCHEME

Plaintiffs Stull, Paige, Quick and Stiff ("Illinois Plaintiffs") incorporate by reference all previous paragraphs and state the following:

### A.    Applicable Illinois Law

52.    The Illinois Consumer Fraud and Deceptive Trade Practices Act prohibits both "pyramid sales schemes" and "chain referral sales techniques."  815 ILCS § 505/2A(2).  The Act defines a pyramid sales scheme as:

> [A]ny plan or operation whereby a person in exchange for money or other thing of value acquires the opportunity to receive a benefit or thing of value, which is primarily based upon the inducement of additional persons by himself or others, regardless of number to participate in the same plan or operation and is not primarily contingent on the volume or quantity of goods, services, or other property sold or distributed or to be sold or distributed to persons for purposes of resale to consumers.

815 ILCS § 505/1(g).  The Act defines a chain referral sales technique as:

> (1) The use or employment of any chain referral sales technique, plan, arrangement or agreement whereby the buyer is induced to purchase merchandise upon the seller's promise or representation that if buyer will furnish seller names of other prospective buyers or like or identical merchandise that seller will contact the named prospective buyers and buyer will receive a reduction in the purchase price by means of a cash rebate, commission, credit toward balance due or any other consideration, which rebate, commission, credit or other consideration is contingent upon seller's ability to sell like or identical merchandise to the named prospective buyers, is declared to be an unlawful practice within the meaning of this Act.

No. 10-L-608

815 ILCS § 505/2A(1).

### C.   ICFA Standing

53.    YTB Defendants' actions were directed to the market generally and otherwise affected the market and implicated consumer protection concerns.  YTB Defendants marketed and sold products and services to two different consumer markets.  First, Defendants marketed and sold products and services to the home-based business market.  The home-based business market is a billion dollar industry in the United States, and the consumers in this market are persons who buy business plans, business services and the right to operate home businesses.  The most visible members of this market are those entities that sell business plans and seminars for real estate speculation and invention submissions on late night television.  YTB Defendants, both independently and through their referring agents, directed their operations to this home-based business market generally by marketing and selling the right to make money by referring travel customers to Defendants.  In fact, one of YTB Defendants' marketing materials is a 128 page magazine entitled "Success from Home," wherein readers could "discover the business changing 53 million lives."   YTB Defendants' marketing scheme sought primarily to reach consumers who were not already part of the travel industry to lure them to purchase their products and services.

54.    Inasmuch as YTB Defendants strictly controlled the actions of its RTAs/IMRs, and the RTAs/IMRs sold no products or services, Illinois Plaintiffs and their proposed class were the referring agents of YTB Defendants (i.e., the agents of travel agents) rather than individual

business consumers. In other words, although Illinois Plaintiffs purchased a "business

opportunity" from YTB Defendants, they were not businesses that sold products or services

under <u>Williams Electronics v. Garrity</u>, 366 F.3d 569 (7th Cir. 2004), or <u>First Magnus Fin. Corp.</u>

<u>v. Dobrowski</u>, 387 F.Supp. 2d 786 (N.D.Ill. 2005). Rather, Plaintiffs were members of the

home-based business market that consumed YTB Defendants' products and services. Illinois

Plaintiffs and their class were the end-users of the RTA/IMR licenses and OTA tools that

documented and organized referral commissions.

55.     YTB Defendants, both independently and through their agents marketed their

illegal "business opportunity" to the home-based business market at large. YTB Defendants

advertised and disseminated literature with respect to YTB "business opportunities" among the

general public. It held major conferences in St. Louis and "Red Carpet Days" in Wood River,

Illinois, attended by thousands of members of the general public who were potential OTA buyers.

The rampant success of the illegal pyramid scheme perpetrated by YTB Defendants injured their

competitors in the legitimate home-based business market by taking their customers.

56.     In marketing their products and services to the home-based business market, YTB

Defendants made numerous false and misleading statements to the general public, including but

not limited to:

     a.     that OTAs were travel agencies, when OTAs were only a means for RTAs
            to refer customers to YTB Defendants;

     b.     that RTAs were travel agents and/or travel professionals that sold travel,
            when RTAs could not sell travel and could only refer customers to YTB
            Defendants;

c.   that any RTA could make a net profit from travel sales referrals, when this was impossible for most, if not all, RTAs;

d.   that minimal effort by the consumer will earn thousands of dollars in travel commissions and increased effort by the consumer can earn $5,000 to $10,000 in travel commissions when it was nearly impossible, if not actually impossible, for any consumer to earn such amounts through the referral of travel customers;  and,

e.   that travel customer referrals would earn YTB Defendants' consumers hundreds to thousands of dollars, when, in fact, 80% earned absolutely nothing, and the median annual travel commission earned was $0.

57.     Second, YTB Defendants marketed and sold products to the travel purchaser market generally. As of 2007, YTB was considered the 26th largest travel agency in the United States, and their market share continued to grow.  YTB Defendants directed their operations at the travel purchaser market generally by marketing and selling their products and services, such as airline tickets and cruise packages, to the public at large.  Moreover, YTB Defendants' illegal pyramid scheme injured both their travel agency competitors as well as travel consumers.  YTB Defendants stole market share from brick-and-mortar travel agencies, putting many out of business. Moreover, by eliminating their competition, YTB Defendants increased the cost of travel for travel consumers at large.  As such, Defendants' illegal pyramid scheme was directed at the travel consumer market generally, affected the consumer market and otherwise implicated consumer protection concerns.

**D.     Class Allegations for Plaintiffs' Class**

58.     Illinois Plaintiffs' Class is defined as follows:

> All IMRs who paid non-reimbursed RTA fees to YTB International, Inc. and/or any of its subsidiaries.

Excluded from this Class are: (1) any IMRs/RTAs who received commissions in excess of the fees which they paid; (2) Defendants, their employees, and all persons who have or had a controlling interest in the Defendant corporations; (3) Defendants' legal representatives, predecessors, successors and assigns; (4) the judge who is assigned to this case and his/her immediate family; (5) all persons who did not reside in Illinois while involved with YTB Defendants' illegal enterprise; and, (6) to the extent the Court finds it appropriate to certify an opt-out class, all persons who properly execute and file a timely request for exclusion from the class.

59.     Illinois Plaintiffs' class consists of over 1,000 members and is so numerous that joinder of all members is impracticable.

60.     The questions of law and fact are common to the class, including but not limited to:

    a.     Whether Illinois substantive law applies to Plaintiffs' claims.

    b.     Whether YTB Defendants' business constitutes an illegal pyramid sales scheme as defined by 815 ILCS 505/1(g).

    c.     Whether YTB Defendants' actions constitute an illegal chain referral sales technique in violation of 815 ILCS 505/2A(1).

    d.     Whether Plaintiffs suffered actual damages as a result of YTB Defendants' violations of 815 ILCS 505/2A(1).

    e.     Whether Plaintiffs suffered actual damages as a result of YTB Defendants' violations of 815 ILCS 505/2A(2).

    f.     Whether Plaintiffs' damages were proximately caused by YTB Defendants' violations of 815 ILCS 505/2A(1).

g.      Whether Plaintiffs' damages were proximately caused by YTB Defendants' violations of 815 ILCS 505/2A(2).

61.     The claims of Plaintiffs' proposed class are typical in that all claims arise out of Section 505/2A of the Illinois Consumer Fraud and Deceptive Business Practices Act and concern the same illegal business practices by YTB Defendants.

62.     Plaintiffs will fairly and adequately protect the interests of the class.

63.     Certifying Illinois Plaintiffs' Class is an appropriate method for the fair and efficient adjudication of this controversy.  Even if individual class members could afford to prosecute this litigation alone, individual litigation magnifies the delay and expense to all parties and to the court system in resolving the controversies at issue.

64.     Plaintiffs do not anticipate difficulties in managing a class action.  In comparison to individual actions by class members, a class action presents fewer management difficulties and provides the benefits of unitary adjudication, economies of scale and comprehensive supervision by a single court applying the substantive law of the state in which it is situated.

65.      The damages incurred by Illinois Plaintiffs and their class exceed Defendants' assets.  Accordingly, adjudication with respect to individual class members would be dispositive of the interests of the other members not parties to the individual adjudications and would impair or impede their ability to protect their interest.

**E.      Class Allegations for the Defendant Class**

66.     Defendants J. Lloyd Tomer and J. Scott Tomer are the representatives of the mandatory Defendant Class.  This Defendant Class is defined as follows: all persons who made

more than fifty thousand dollars in recruiting fees as a participant in YTB Defendants' illegal pyramid scheme.

67.     Excluded from the Defendant Class are: (1) Defendants' legal representatives, predecessors, successors and assigns; (2) the judge who is assigned to this case and his/her immediate family; and, (3) Plaintiffs' attorneys and their employees.

68.     The proposed Defendant Class is comprised of over a hundred participants in YTB Defendants' illegal scheme, the joinder of which is impracticable, and the members of the Class are so numerous that it is impractical to bring all of them before the Court in this action.

69.     Class treatment of the claims asserted herein will provide substantial benefit to both the parties and the court system. A well defined commonality of interests in the questions of law and fact affects Defendant and members of the proposed Defendant Class.

70.     There are common questions of law and fact applicable to the claims asserted against the Defendant Class.  These common questions include but are not limited to:

     a.     Whether the Proposed Defendant Class perpetrated an illegal pyramid sales scheme or chain referral sales technique as prohibited by Illinois law;

     b.     Whether Plaintiffs and their proposed class suffered damages as a result of the Defendant Class' perpetration of an illegal pyramid scheme or chain referral sales technique; and,

     c.     Whether Plaintiffs and their Proposed Class' damages were proximately caused by the Defendant Class' perpetration of an illegal pyramid scheme or chain referral sales technique.

71.     These questions of law and fact predominate over any questions affecting only individual members of Plaintiffs' class.

No. 10-L-608

72.    Defendants J. Lloyd Tomer and J. Scott Tomer will fairly and adequately protect the interests of the Defendant Class.

73.    Plaintiffs anticipate that the defenses raised by Defendants J. Lloyd Tomer and J. Scott Tomer are typical to those of the Defendant Class, and these Defendants will fairly and adequately represent and protect the interests of the proposed Class.  Defendant does not have any interests antagonistic to those of the Class in this litigation. Plaintiffs anticipates that Defendants will be represented by attorneys at Armstrong Teasdale, LLP, which is a firm that is well-versed in business torts and class actions.  The questions of law and fact common to the members of the Defendant Class, some of which are set out above, predominate over any questions affecting only individual members of the Class.

74.    Certification of a Defendant Class is an appropriate method for the fair and efficient adjudication of the controversy.  Prosecuting separate actions against individual members of the Defendant Class would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants.  Different courts may come to different conclusions as to whether Defendants perpetrated an illegal pyramid scheme. Varying decisions would create incompatible standards for individuals and businesses in the forum State.

75.    Furthermore, prosecuting separate actions against individual members of the Defendant Class would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect

their interests. A ruling on behalf of one member of Plaintiffs' Proposed Class against one member of the Defendant Class may be in an amount in excess of that Defendant's assets, making it impossible for other members of the Plaintiff Class to recover.

76.     The damages incurred by Plaintiffs and their Proposed Class exceed the assets of the individual members of the Defendant Class. Accordingly, adjudication with respect to individual class members would be dispositive of the interests of the other members not parties to the individual adjudications and would impair or impede their ability to protect their interest.

**E.     Cause of Action: Violation of §505/2A(2) of the Illinois Consumer Fraud and Deceptive Business Practices Act**

77.     In violation of 815 ILCS 505/2A(2), YTB Defendants' business constitutes an illegal pyramid sales scheme as defined by 815 ILCS 505/1(g). Plaintiffs paid money to YTB International, Inc. and/or one or more of its subsidiaries in the form of fees for OTAs. In exchange, Plaintiffs received the opportunity to earn marketing commissions and rebates, or reimbursements of RTA fees, primarily based upon the inducement of additional persons to participate in the YTB pyramid scheme by buying OTAs and not primarily based upon the sale of travel or any other goods or services to consumers.

78.     YTB Defendants intended for Plaintiffs to make the payments described in the preceding paragraph in reliance upon YTB Defendants' promise of an opportunity to make money that was primarily based upon the inducement of others to participate in the YTB pyramid scheme by buying OTAs and not primarily based upon the sale of travel or any other consumer goods or services.

No. 10-L-608

79.     YTB Defendants' deceptive business practice occurred in the course of trade or commerce.

80.     Illinois Plaintiffs and their Proposed Class suffered actual damages in excess of One Hundred Thousand Dollars ($100,000.00) as the proximate result of YTB Defendants' deceptive business practices.

**WHEREFORE**,  Illinois Plaintiffs ask this Court to certify the Proposed Classes; to appoint the undersigned as lead counsel for the Class; to enter a judgment in excess of *$100,000.00* for actual and punitive damages; to enter an Order permanently enjoining Defendants from continuing their illegal conduct; and for such other relief as the Court sees fit.

**COUNT II – ILLINOIS CONSUMER FRAUD ACT –
CHAIN REFERRAL SALES TECHNIQUE**

81.     Illinois Plaintiffs reincorporate and restate paragraphs 1-76 of this Complaint.

82.     In violation of 815 ILCS 505/2A(1), YTB Defendants' actions constituted an illegal chain referral sales technique.  YTB International, Inc., by and through its subsidiaries, induced Plaintiffs to buy OTAs by promising to reimburse OTA fees contingent upon the sale of additional OTAs to the RTAs enrolled by the original IMR.

83.     YTB Defendants intended for Plaintiffs to buy OTAs in reliance upon the above-described chain referral sales technique.

84.     YTB Defendants' use of the above-described chain referral sales technique occurred in the course of trade or commerce.

85.     Plaintiffs and their Proposed Class suffered actual damages in excess of One

Hundred Thousand Dollars ($100,000.00) as the proximate result of YTB Defendants' above-described chain referral sales technique.

**WHEREFORE**, Illinois Plaintiffs ask this Court to certify the Proposed Classes; to appoint the undersigned as lead counsel for the Class; to enter a judgment in excess of *$100,000.00* for actual and punitive damages; to enter an Order permanently enjoining YTB Defendants from continuing their illegal conduct; and for such other relief as the Court sees fit.

## COUNT III – ILLINOIS COMMON LAW CIVIL CONSPIRACY – ALL PLAINTIFFS

86.     Illinois Plaintiffs and their Proposed Class, Missouri Plaintiffs and their Proposed Class, Georgia Plaintiffs and their Proposed Class, and Grace Perry and her Proposed Class, incorporate by reference and restate all preceding paragraphs in this Complaint as well as paragraphs 94-125, 133-164 and 173-204 of this Complaint.

87.     YTB Defendants perpetrated a tortious and illegal pyramid scheme and a tortious and illegal chain sales referral technique in violation of the laws of the States of Illinois, Missouri, Georgia and Utah.  Conspiracy Defendants acted in concert with YTB Defendants by furthering their tortious and illegal objectives and actions.

88.     Conspiracy Defendants knowingly and voluntarily participated in a common scheme to unlawfully and tortiously perpetrate an illegal pyramid scheme and chain sales referral technique.

89.     Conspiracy Defendants understood the general objectives of the tortious and illegal pyramid scheme and chain sales referral technique, accepted them and agreed, either

No. 10-L-608

explicitly or implicitly, to further those objectives.

90.     Conspiracy Defendants knowingly and voluntarily advanced and participated in

YTB Defendants' illegal pyramid scheme and chain sales referral technique by performing the

following non-exclusive list of actions:

a.     On July 1, 2005, YTB International, Inc. entered into a contract with lessor Meridian Land Co. to lease approximately 13,000 square feet of property at One Country Club Drive, Edwardsville, Illinois. This property was owned and controlled by Meridian Land Co.

b.     On November 1, 2005, YTB International, Inc. entered into a contract with lessor Meridian Land Co. to lease approximately 5,000 square feet at 600 Country Club View Drive, Edwardsville , Illinois.  This property was owned and controlled by Meridian Land Co.

c     The combined rental cost of the two aforementioned properties amounts to $15,000 per month.  Combined rent expense for these two leases was $137,300 and $180,00 for the years ending December 31, 2007 and 2006 respectively.

d.     On July 27, 2007, YTB International, Inc. entered into a purchase contract to buy the aforementioned property at  One Country Club View, Edwardsville, Illinois for $1,850,000, of which $480,500 was paid by the YTB International, Inc. in cash as of the signing of the real estate contract, and the remaining $1,369,500 of which constituted obligations of Meridian Land Co. were paid and/or assumed by the YTB International, Inc. at the closing, consisting of (i) $1,305,525 principal amount of aggregate indebtedness owed by Meridian Land Co. to a local bank that was assumed by the YTB Defendants, (ii) $57,791 of accrued property taxes owed by Meridian Land for the subject property for 2006 and for a pro-rata portion of 2007, and (iii) $6,184 of assorted closing costs of Meridian Land Co.

e.     In January, 2008, YTB International purchased the aforementioned property located at 600 Country Club View Drive, Edwardsville, Illinois from Meridian Land Co for $2,350,000 in cash.  YTB International, Inc. paid $500,000 out of the $2,350,000 purchase price as a deposit as of the execution of the purchase contract, and the remaining $1,850,000 is due at

the closing of the acquisition of this property, which was scheduled to occur in, or prior to May, 2008.

f.     In July, 2006, YTB International, Inc. borrowed $2.5 million from Meridian Bank in connection with its acquisition of the land and building which houses its corporate headquarters in Wood River, Illinois.

g.     During the year that ended December 31, 2007, YTB International, Inc. made aggregate payments of approximately $1,038,175 pursuant to the terms of the development contract for its corporate headquarters in Wood River, Illinois. The contract for the development of the real property on which such headquarters are located was awarded to Winfield Development LLC.  Winfield Development, LLC developed said property for an undisclosed fee.

h.     On August 17, 2007, YTB International, Inc. entered into a lease agreement with lessor Meridian Land Co. to rent an approximately 5,500 square feet premises located at #112 Magnolia Drive (Lot #9 Magnolia Commons), Glen Carbon, Illinois.  Rent on this property is $8,400 per month.

i.     Conspiracy Defendants Timothy Kaiser, M.D. and Clay Winfield facilitated, directed and profited from the actions mentioned in subparagraphs (a)-(h) of this paragraph.

j.     CCMP, Inc. designed and manufactured all the marketing materials for YTB Defendants' illegal operations, and was paid no less than $7,000,000.00 for making these materials.  CCMP, Inc. was also paid for creating the 130 foot tall, 50,000 pound replica of the Statue of Liberty used at YTB Defendants' 2008 convention in St. Louis, Missouri.  CCMP, Inc. described this statue, which was approximately 85% of the size of the original statue, as the largest replica of Lady Liberty ever created.  It took 48 semi-tractor trailer trucks to transport this statue to St. Louis, Missouri.  While the actual cost was never disclosed, reports estimate that CCMP, Inc. was paid over $8,000,000.00 for the statue.  YTB Defendants' 2008 convention lasted 5 days.

91.     Additional questions of law and fact are common to the class, including but not limited to:

No. 10-L-608

a.      Whether Illinois common law applies to all Plaintiffs' conspiracy claims;

b.      Whether Conspiracy Defendants' actions constituted civil conspiracy; and,

c.      Whether Plaintiffs suffered damages as a result of Conspiracy Defendants' civil conspiracy.

92.     Plaintiffs' claims are typical to those of their Proposed Class because they arise out of Illinois common law and they concern the same illegal conspiracy actions of Conspiracy Defendants.

93.     Plaintiffs and their class suffered damages in excess of One Hundred Thousand Dollars ($100,000.00) as the proximate result of Conspiracy Defendants' civil conspiracy.

**WHEREFORE**, Illinois Plaintiffs, Missouri Plaintiffs, Georgia Plaintiffs, and Grace Perry ask this Court to certify the Proposed Classes; to appoint the undersigned as lead counsel for the Class; to enter a judgment against Conspiracy Defendants for an amount in excess of ***One Hundred Thousand Dollars ($100,000.00)*** for actual and punitive damages.

## COUNT IV – MISSOURI MERCHANDISING PRACTICES ACT

Plaintiff Faye Morrison, Jeff and Polly Hartman, JPH Development, Inc. and Courtney Speed ("Missouri Plaintiffs") incorporate by reference and restate paragraphs 7-51, 53 and 55-57 of this Complaint, and state as follows:

### A.      Applicable Missouri Law

94.     A pyramid sales scheme is defined by the Missouri Statutes as follows:

> The term "pyramid sales scheme" includes any plan or operation for the sale or distribution of goods, services or other property wherein a person for a consideration acquires the opportunity to receive a pecuniary benefit, which is not primarily contingent on the volume or quantity of goods,

29 of 57

> services, or other property sold or distributed or to be sold or distributed to persons for purposes of resale to consumers, and is based upon the inducement of additional persons, by himself or herself or others, regardless of number, to participate in the same plan or operation.

VAMS 407.400.5. Missouri law prohibits pyramid sales schemes, VAMS 407.405, and creates a private cause of action against "any person who, directly or through the use of agents or intermediaries, induces or causes another person to participate in a pyramid sales scheme," VAMS 407.410.

**B.   Class Allegations**

95.    Missouri Plaintiffs' Proposed Class is defined as follows:

> All IMRs who paid non-reimbursed RTA fees to YTB International, Inc. and/or any of its subsidiaries.

Excluded from this Class are:  (1) any IMRs/RTAs who received commissions in excess of the fees which they paid; (2) Defendants, their employees, and all persons who have or had a controlling interest in the Defendant corporations; (3) Defendants' legal representatives, predecessors, successors and assigns; (4) the judge who is assigned to this case and his immediate family; (5) all persons who did not reside in Missouri while engaging in YTB Defendants' illegal enterprise; and, (6) to the extent the Court finds it appropriate to certify an opt-out class, all persons who properly execute and file a timely request for exclusion from the class.

96.    Missouri Plaintiffs' class consists of over 1,000 members and is so numerous that joinder of all members is impracticable.

97.    The questions of law and fact are common to the class, including but not limited

No. 10-L-608

to:

    a.      Whether Missouri substantive law applies to Plaintiffs' claims;

    b.      Whether YTB Defendants' business constitutes an illegal pyramid sales scheme as defined by VAMS 407.400.5;

    d.      Whether Missouri Plaintiffs suffered actual damages as a result of YTB Defendants' violations of VAMS 407.405; and,

    e.      Whether Plaintiffs' damages were proximately caused by YTB Defendants' violations of VAMS 407.405.

98.    The claims of Plaintiffs' Proposed Class are typical in that all claims arise out of Missouri Merchandising Practices Act and concern the same illegal business practices by YTB Defendants.

99.    Missouri Plaintiffs will fairly and adequately protect the interests of their Proposed Class.

100.    Certifying Missouri Plaintiffs' Class is an appropriate method for the fair and efficient adjudication of this controversy.  Even if individual class members could afford to prosecute this litigation alone, individual litigation magnifies the delay and expense to all parties and to the court system in resolving the controversies at issue.

101.    Plaintiffs do not anticipate difficulties in managing a class action.  In comparison to individual actions by class members, a class action presents fewer management difficulties and provides the benefits of unitary adjudication, economies of scale and comprehensive supervision by a single court applying the substantive law of the state in which it is situated.

102.    The damages incurred by Missouri Plaintiffs and their class exceed Defendants'

assets.  Accordingly, adjudication with respect to individual class members would be dispositive of the interests of the other members not parties to the individual adjudications and would impair or impede their ability to protect their interest.

**C.    Choice of Law**

103.    Application of Missouri law in the instant case will yield a different result than application of Illinois law.

104.    The needs of interstate systems mandate that the citizens of the many States be protected from multi-state corporations that engage in illegal pyramid schemes.

105.    The protective measures of the Illinois Consumer Fraud Act ("ICFA"), which prohibit illegal pyramid schemes, are generally limited to Illinois citizens, and the Federal District Court for the Southern District of Illinois has held that the ICFA does not apply to non-residents of Illinois in this case3.

106.    It is the policy of the State of Missouri that the Missouri Merchandising Practice Act applies to Missouri citizens.  The basic policy underlying Missouri's anti-pyramid statute is the prohibition of illegal pyramid schemes that operate within the borders of the State.

107.    There are no justified exceptions for illegal pyramid schemes that exist under Illinois law that conflict with Missouri law.

108.    Missouri's prohibitions on illegal pyramid schemes is largely identical to those in the ICFA; thus, this Court will easily apply and determine the relevant issues in this case.

109.    Missouri Plaintiffs were injured in Missouri.

110.    Missouri Plaintiffs participated in YTB Defendants' illegal scheme in Missouri. Missouri Plaintiffs communicated with Defendants electronically and telephonically from Missouri.  Missouri Plaintiffs sold and/or attempted to sell Defendants' products to Missouri Citizens.

### D.    Class Allegations for the Defendant Class

111.    Defendants J. Lloyd Tomer and J. Scott Tomer are the representatives of the mandatory Defendant Class.  This Defendant Class is defined as follows: all persons who made more than fifty thousand dollars in recruiting fees as a participant in YTB Defendants' illegal pyramid scheme.

112.    Excluded from the Defendant Class are: (1) Defendants' legal representatives, predecessors, successors and assigns; (2) the judge who is assigned to this case and his/her immediate family; and, (3) Plaintiffs' attorneys and their employees.

113.    The proposed Defendant Class is comprised of over a hundred participants in YTB Defendants' illegal scheme, the joinder of which is impracticable, and the members of the Class are so numerous that it is impractical to bring all of them before the Court in this action.

114.    Class treatment of the claims asserted herein will provide substantial benefit to both the parties and the court system. A well defined commonality of interests in the questions of law and fact affects Defendant and members of the proposed Defendant Class.

115.    There are common questions of law and fact applicable to the claims asserted against the Defendant Class.  These common questions include but are not limited to:

---

3 Plaintiffs are appealing this ruling.

a.      Whether the Proposed Defendant Class perpetrated an illegal pyramid sales scheme as prohibited by Missouri law;

b.      Whether Plaintiffs and their Proposed Class suffered damages as a result of the Defendant Class' perpetration of an illegal pyramid scheme; and,

c.      Whether Plaintiffs and their Proposed Class' damages were proximately caused by the Defendant Class' perpetration of an illegal pyramid scheme or chain referral sales technique.

116.    These questions of law and fact predominate over any questions affecting only individual members of Plaintiffs' Class.

117.    Defendants J. Lloyd Tomer and J. Scott Tomer will fairly and adequately protect the interests of the Defendant Class.

118.    Plaintiffs anticipate that the defenses raised by Defendants J. Lloyd Tomer and J. Scott Tomer are typical to those of the Defendant Class, and these Defendants will fairly and adequately represent and protect the interests of the Proposed Class.  Defendant does not have any interests antagonistic to those of the Class in this litigation. Plaintiff anticipates that Defendants will be represented by attorneys at Armstrong Teasdale, LLP, which is a firm that is well-versed in business torts and class actions.  The questions of law and fact common to the members of the Defendant Class, some of which are set out above, predominate over any questions affecting only individual members of the Class.

119.    Certification of a Defendant Class is an appropriate method for the fair and efficient adjudication of the controversy.  Prosecuting separate actions against individual members of the Defendant Class would create a risk of inconsistent or varying adjudications that

would establish incompatible standards of conduct for Defendants.  Different courts may come to

different conclusions as to what Defendants perpetrated an illegal pyramid scheme. Varying

decisions would create incompatible standards for individuals and businesses in the forum State.

120.    Furthermore, prosecuting separate actions against individual members of the

Defendant Class would create a risk of adjudications with respect to individual class members

that, as a practical matter, would be dispositive of the interests of the other members not parties

to the individual adjudications or would substantially impair or impede their ability to protect

their interests.  A ruling on behalf of one member of Plaintiffs' Proposed Class against one

member of the Defendant class may be in an amount in excess of the Defendant's assets, making

it impossible for other members of the Plaintiff Class to recover.

121.    The damages incurred by Plaintiffs and their Proposed Class exceed the assets of

the individual members of the Defendant Class.  Accordingly, adjudication with respect to

individual class members would be dispositive of the interests of the other members not parties

to the individual adjudications and would impair or impede their ability to protect their interest.

**E.**    **Cause of Action: Violation of VAMS 407.410**

122.    YTB Defendants' businesses represented an illegal pyramid sales scheme as

defined by VAMS 407.400.5.  Missouri Plaintiffs paid YTB Defendants for the opportunity to

receive a pecuniary benefit that was not primarily contingent on the volume or quantity of goods,

services, or other property sold or distributed or to be sold or distributed to persons for purposes

of resale to consumers, but rather was based upon the inducement of others to participate in the

No. 10-L-608

same plan or operation.

123. Defendants sold merchandise in the State of Missouri.

124. In violation of VAMS 407.410, YTB Defendants induced or caused Missouri Plaintiffs and their Proposed Class to participate in a pyramid sales scheme either directly or through the use of agents or intermediaries.

125. Missouri Plaintiffs and their Proposed Class suffered actual damages in excess of One Hundred Thousand Dollars ($100,000.00) as the proximate result of YTB Defendants' deceptive business practices.

**WHEREFORE**, Missouri Plaintiffs ask this Court to certify the Proposed Class; to appoint the undersigned as lead counsel for the Class; to enter a judgment in excess of ***$100,000.00*** for actual and punitive damages; to enter an Order permanently enjoining YTB Defendants from continuing their illegal conduct; and for such other relief as the Court sees fit.

## COUNT V – MISSOURI COMMON LAW CIVIL CONSPIRACY – ALTERNATIVE THEORY

Missouri Plaintiffs incorporate by reference and restate paragraphs 7-51, 53, 55-57 and 94-125 of this Complaint, and state in the alternative the following:

126. YTB Defendants perpetrated a tortious and illegal pyramid scheme. Conspiracy Defendants acted in concert with YTB Defendants by furthering their tortious and illegal objectives and actions.

127. Conspiracy Defendants knowingly and voluntarily participated in a common scheme to unlawfully and tortiously perpetrate an illegal pyramid scheme.

36 of 57

128.    Conspiracy Defendants understood the general objectives of the tortious and illegal pyramid scheme, accepted them and agreed, either explicitly or implicitly, to further those objectives.  Conspiracy Defendants had a meeting of the minds with YTB Defendants on the object or course of action for the pyramid sales scheme.

129.    Plaintiffs further incorporate by reference Paragraph 90 of this Complaint and all of its subparagraphs.  Conspiracy Defendants knowingly and voluntarily advanced and participated in YTB Defendants' illegal pyramid scheme by performing the non-exclusive list of actions listed in that paragraph.

130.    Additional questions of law and fact are common to the class, including but not limited to:

    a.    Whether Missouri common law applies to Plaintiffs' conspiracy claims;

    b.    Whether Conspiracy Defendants' actions constituted civil conspiracy; and,

    c.    Whether Plaintiffs suffered damages as a result of Conspiracy Defendants' civil conspiracy.

131.    Plaintiffs' claims are typical to those of their Proposed Class because they arise out of Illinois common law and they concern the same illegal conspiracy actions of Conspiracy Defendants.

132.    Plaintiffs and their class suffered damages in excess of One Hundred Thousand Dollars ($100,000.00) as the proximate result of Conspiracy Defendants' civil conspiracy.

**WHEREFORE**, Missouri Plaintiffs ask this Court to certify the Proposed Class; to appoint the undersigned as lead counsel for the Class; to enter a judgment in excess of

No. 10-L-608

***$100,000.00*** for actual and punitive damages against Conspiracy Defendants; to enter an Order

permanently enjoining Conspiracy Defendants from continuing their illegal conduct; and for such

other relief as the Court sees fit.

### COUNT VI – GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT

Plaintiffs Kwame Thompson, Jorge Gonzalex, and Nikky Shotwell ("Georgia Plaintiffs")

incorporate by reference and restate paragraphs 7-51, 53 and 55-57 of this Complaint, and state

as follows:

**A.**     **Applicable Georgia Law**

133.    Georgia law forbids the following:

No multilevel distribution company4 or participant in its marketing program shall:

(1) Operate or, directly or indirectly, participate in the operation of any multilevel marketing program wherein the financial gains to the participants are primarily dependent upon the continued, successive recruitment of other participants and where sales to nonparticipants are not required as a condition precedent to realization of such financial gains;

(2) Offer to pay, pay, or authorize the payment of any finder's fee, bonus, refund, override, commission, cross-commission, dividend, or other consideration to any participant in a multilevel marketing program solely for the solicitation or recruitment of other participants therein;

(3) Offer to pay, pay, or authorize the payment of any finder's fee, bonus, refund, override, commission, cross-commission, dividend, or other

---

4 See Ga. Code Ann., § 10-1-410(6).

consideration to any participant in a multilevel marketing program in connection with the sale of any product or service unless the participant performs a bona fide supervisory, distributive, selling, or soliciting function in the sale or delivery of such product or services to the ultimate consumer;

(4) Offer to pay, pay, or authorize the payment of any finder's fee, bonus, refund, override, commission, cross-commission, dividend, or other consideration to any participant:

(A) Where payment thereof is or would be dependent on the element of chance dominating over the skill or judgment of such participant;

(B) Where no amount of judgment or skill exercised by the participant has any appreciable effect upon any finder's fee, bonus, refund, override, commission, cross-commission, dividend, or other consideration which the participant may receive; or

(C) Where the participant is without that degree of control over the operation of such plan as to enable him substantially to affect the amount of finder's fee, bonus, refund, override, commission, cross-commission, dividend, or other consideration which he may receive or be entitled to receive[.]

Ga. Code Ann., § 10-1-411(a)(1-4). Georgia law creates a private cause of action for violations

of the preceding statutory provisions. Ga. Code Ann., § 10-1-417, § 10-1-399.

**B.    Class Allegations**

134.    Georgia Plaintiffs' Proposed Class is defined as follows:

All IMRs who paid non-reimbursed RTA fees to YTB International, Inc. and/or any of its subsidiaries.

Excluded from this Class are:  (1) any IMRs/RTAs who received commissions in excess of the

fees which they paid; (2) Defendants, their employees, and all persons who have or had a

controlling interest in the Defendant corporations; (3) Defendants' legal representatives,

predecessors, successors and assigns; (4) the judge who is assigned to this case and his

immediate family; (5) all persons who did not reside in Georgia while engaging in YTB

Defendants' illegal enterprise; and, (6) to the extent the Court finds it appropriate to certify an

opt-out class, all persons who properly execute and file a timely request for exclusion from the

class.

135.    Georgia Plaintiff's Proposed Class consists of over 1,000 members and is so

numerous that joinder of all members is impracticable.

136.    The questions of law and fact are common to the class, including but not limited

to:

a.    Whether Georgia substantive law applies to Plaintiffs' claims;

b.    Whether YTB Defendants' business constitutes an illegal pyramid sales
        scheme as defined by Ga. Code Ann., § 10-1-411(a)(1-3);

d.    Whether Georgia Plaintiffs suffered actual damages as a result of YTB
        Defendants' violations of Ga. Code Ann., § 10-1-411(a)(1-3); and,

e.    Whether Plaintiffs' damages were proximately caused by YTB
        Defendants' violations of Ga. Code Ann., § 10-1-411(a)(1-3).

137.    The claims of Plaintiffs' Proposed Class are typical in that all claims arise out of

the Georgia Uniform Deceptive Trade Practices Act and concern the same illegal business

practices by YTB Defendants.

138.    Georgia Plaintiffs will fairly and adequately protect the interests of their Proposed

Class.

139.    Certifying Georgia Plaintiffs' Class is an appropriate method for the fair and

efficient adjudication of this controversy.  Even if individual class members could afford to

prosecute this litigation alone, individual litigation magnifies the delay and expense to all parties

and to the court system in resolving the controversies at issue.

140.    Plaintiffs do not anticipate difficulties in managing a class action.  In comparison

to individual actions by class members, a class action presents fewer management difficulties and

provides the benefits of unitary adjudication, economies of scale and comprehensive supervision

by a single court applying the substantive law of the state in which it is situated.

141.    The damages incurred by Georgia Plaintiffs and their class exceed Defendants'

assets.  Accordingly, adjudication with respect to individual class members would be dispositive

of the interests of the other members not parties to the individual adjudications and would impair

or impede their ability to protect their interest.

**C.    Choice of Law**

142.    Application of Georgia law in the instant case will yield a different result than

application of Illinois law.

143.    The needs of interstate systems mandate that the citizens of the many States be

protected from multi-state corporations that engage in illegal pyramid schemes.

144.    The protective measures of the Illinois Consumer Fraud Act ("ICFA"), which

prohibit illegal pyramid schemes, are generally limited to Illinois citizens, and the Federal

District Court for the Southern District of Illinois has held that the ICFA does not apply to non-

residents of Illinois in this case.

145.    It is the policy of the State of Georgia that the Georgia Uniform Trade Practice

Act applies to Georgia citizens.  The basic policy underlying Georgia's anti-pyramid statute is the prohibition of illegal pyramid schemes that operate within the borders of the State.

146.    There are no justified exceptions for illegal pyramid schemes that exist under Illinois law that conflict with Georgia law.

147.    Georgia's prohibitions on illegal pyramid schemes is largely identical to those in the ICFA; thus, this Court will easily apply and determine the relevant issues in this case.

148.    Georgia Plaintiffs were injured in Georgia.

149.    Georgia Plaintiffs participated in YTB Defendants' illegal scheme in Georgia. Georgia Plaintiffs communicated with Defendants electronically and telephonically from Georgia.  Georgia Plaintiffs sold and/or attempted to sell Defendants' products to Georgia Citizens.

**D.    Class Allegations for the Defendant Class**

150.    Defendants J. Lloyd Tomer and J. Scott Tomer are the representatives of the mandatory Defendant Class.  This Defendant Class is defined as follows: all persons who made more than fifty thousand dollars in recruiting fees as a participant in YTB Defendants' illegal pyramid scheme.

151.    Excluded from the Defendant Class are: (1) Defendants' legal representatives, predecessors, successors and assigns; (2) the judge who is assigned to this case and his/her immediate family; and, (3) Plaintiffs' attorneys and their employees.

152.    The proposed Defendant Class is comprised of over a hundred participants in

YTB Defendants' illegal scheme, the joinder of which is impracticable, and the members of the

Class are so numerous that it is impractical to bring all of them before the Court in this action.

153.    Class treatment of the claims asserted herein will provide substantial benefit to

both the parties and the court system. A well defined commonality of interests in the questions of

law and fact affects Defendant and members of the proposed Defendant Class.

154.    There are common questions of law and fact applicable to the claims asserted

against the Defendant Class.  These common questions include but are not limited to:

        a.       Whether the Proposed Defendant Class perpetrated an illegal pyramid
                      sales scheme as prohibited by Georgia law;

        b.       Whether Plaintiffs and their Proposed Class suffered damages as a result
                      of the Defendant Class' perpetration of an illegal pyramid scheme; and,

        c.       Whether Plaintiffs and their Proposed Class' damages were proximately
                      caused by the Defendant Class' perpetration of an illegal pyramid scheme
                      or chain referral sales technique.

155.    These questions of law and fact predominate over any questions affecting only

individual members of Plaintiffs' class.

156.    Defendants J. Lloyd Tomer and J. Scott Tomer will fairly and adequately protect

the interests of the Defendant Class.

157.    Plaintiffs anticipate that the defenses raised by Defendants J. Lloyd Tomer and J.

Scott Tomer are typical to those of the Defendant Class, and these Defendants will fairly and

adequately represent and protect the interests of the Proposed Class.  Defendant does not have

any interests antagonistic to those of the Class in this litigation. Plaintiff anticipates that

Defendants will be represented by attorneys at Armstrong Teasdale, LLP, which is a firm that is

well-versed in business torts and class actions. The questions of law and fact common to the

members of the Defendant Class, some of which are set out above, predominate over any

questions affecting only individual members of the Class.

158.    Certification of a Defendant Class is an appropriate method for the fair and

efficient adjudication of the controversy. Prosecuting separate actions against individual

members of the Defendant Class would create a risk of inconsistent or varying adjudications that

would establish incompatible standards of conduct for Defendants. Different courts may come to

different conclusions as to whether Defendants perpetrated an illegal pyramid scheme. Varying

decisions would create incompatible standards for individuals and businesses in the forum State.

159.    Furthermore, prosecuting separate actions against individual members of the

Defendant Class would create a risk of adjudications with respect to individual class members

that, as a practical matter, would be dispositive of the interests of the other members not parties

to the individual adjudications or would substantially impair or impede their ability to protect

their interests. A ruling on behalf of one member of Plaintiff's Proposed Class against one

member of the Defendant Class may be in an amount in excess of that Defendant's assets,

making it impossible for other members of the Plaintiff Class to recover.

160.    The damages incurred by Plaintiffs and their Proposed Class exceed the assets of

the individual members of the Defendant Class. Accordingly, adjudication with respect to

individual class members would be dispositive of the interests of the other members not parties

No. 10-L-608

to the individual adjudications and would impair or impede their ability to protect their interest.

E.      **Cause of Action: Violation of Ga. Code Ann., § 10-1-411(a)(1-3)**

161.   Georgia Plaintiffs knew of YTB Defendants' violations of Georgia law within two years of filing this Complaint.  They did not have any reason to believe that YTB Defendants' business plan violated Georgia law before that time.

162.   YTB Defendants operated a multilevel marketing program as defined by Georgia law.  YTB Defendants do not have assets or a place of business in the State of Georgia.

163.   YTB Defendants violated Section 10-1-411 of the Georgia Code in one or more of the following ways:

   a.      YTB Defendants operated a multilevel marketing program where the financial gain of the persons who were IMRs or both IMRs and RTAs was primarily dependent upon the successive recruitment of other participants and where sales of goods or services to nonparticipants was not required to realize financial gains, Ga. Code Ann., § 10-1-411(a)(1);

   b.      YTB Defendants paid commissions to IMRs solely for the solicitation or recruitment of other participants into their program, Ga. Code Ann., § 10-1-411(a)(2); and,

   c.      YTB Defendants paid commissions, bonuses and overrides to IMRs and RTAs that were unrelated to a bona fide supervisory, distributive, selling, or soliciting function in the sale or delivery of such product or services to the ultimate consumer, Ga. Code Ann., § 10-1-411(a)(3).

164.   Georgia Plaintiffs and their Proposed Class suffered actual damages in excess of One Hundred Thousand Dollars ($100,000.00) as the proximate result of YTB Defendants'

No. 10-L-608

deceptive business practices.

WHEREFORE, Georgia Plaintiffs ask this Court to certify the Proposed Class; to appoint the undersigned as lead counsel for the Class; to enter a judgment in excess of *$100,000.00* for actual and punitive damages; to enter an Order permanently enjoining YTB Defendants from continuing their illegal conduct; and for such other relief as the Court sees fit.

## COUNT VII – GEORGIA COMMON LAW CIVIL CONSPIRACY – ALTERNATIVE THEORY

Georgia Plaintiffs incorporate by reference and restate paragraphs 7-51, 53, 55-57 and 133-164 of this Complaint, and state in the alterative the following:

165.   YTB Defendants perpetrated a tortious and illegal pyramid scheme.  Conspiracy Defendants acted in concert with YTB Defendants by furthering their tortious and illegal objectives and actions.

166.   Conspiracy Defendants knowingly and voluntarily participated in a common scheme to unlawfully and tortiously perpetrate an illegal pyramid scheme.

167.   Conspiracy Defendants understood the general objectives of the tortious and illegal pyramid scheme, accepted them and agreed, either explicitly or implicitly, to further those objectives.  In other words, there was a meeting of the minds.  Conspiracy Defendants had a meeting of the minds with YTB Defendants on the object or course of action for the pyramid sales scheme.

168.   Conspiracy Defendants knowingly and voluntarily advanced and participated in

No. 10-L-608

YTB Defendants' tortious and illegal pyramid scheme by performing the following non-exclusive list of actions:

169.    Plaintiffs further incorporate by reference and restate Paragraph 90 of this Complaint and all of its subparagraphs.   Conspiracy Defendants knowingly and voluntarily advanced and participated in YTB Defendants' illegal pyramid scheme by performing the non-exclusive list of actions listed in that Paragraph.

170.    Additional questions of law and fact are common to the class, including but not limited to:

      a.    Whether Georgia common law applies to Plaintiffs' conspiracy claims;

      b.    Whether Conspiracy Defendants' actions constituted civil conspiracy; and,

      c.    Whether Plaintiffs suffered damages as a result of Conspiracy Defendants' civil conspiracy.

171.    Plaintiffs' claims are typical to those of their Proposed Class because they arise out of Illinois common law and they concern the same illegal conspiracy actions of Conspiracy Defendants.

172.    Plaintiffs and their class suffered damages in excess of One Hundred Thousand Dollars ($100,000.00) as the proximate result of Conspiracy Defendants' civil conspiracy.

**WHEREFORE**, Georgia Plaintiffs and ask this Court to certify the Proposed Class; to appoint the undersigned as lead counsel for the Class; to enter a judgment in excess of *$100,000.00* for actual and punitive damages against Conspiracy Defendants; to enter an Order permanently enjoining Conspiracy Defendants from continuing their illegal conduct; and for such

No. 10-L-608

other relief as the Court sees fit.

## COUNT  VIII – UTAH CONSUMER SALES PRACTICES ACT

Plaintiff Grace Perry incorporates by reference and restates paragraphs 7-51, 53 and 55-57 of this Complaint, and state as follows:

A.   **Applicable Utah Law**

173.   A pyramid scheme is defined in the Utah Criminal Code as follows:

> "Pyramid scheme" means any sales device or plan under which a person gives consideration to another person in exchange for compensation or the right to receive compensation which is derived primarily from the introduction of other persons into the sales device or plan rather than from the sale of goods, services, or other property.

U.C.A. 1953 § 76-6a-2(4).  Promoting, offering or granting participation in a pyramid scheme as defined by the Utah Criminal Code is a deceptive act or business practice as defined by the Utah Consumer Sales Practices Act. U.C.A. 1953 § 13-11-4(2)(n), and a consumer has a right to recover damages caused violations of the Act on behalf of a class, U.C.A. 1953 § 13-11-19(4)(a).

B.   **Class Allegations**

174.   Plaintiff's Proposed Class is defined as follows:

> All IMRs who paid non-reimbursed RTA fees to YTB International, Inc. and/or any of its subsidiaries.

Excluded from this Class are:  (1) any IMRs/RTAs who received commissions in excess of the fees which they paid; (2) Defendants, their employees, and all persons who have or had a controlling interest in the Defendant corporations; (3) Defendants' legal representatives, predecessors, successors and assigns; (4) the judge who is assigned to this case and his

immediate family; (5) all persons who did not reside in Utah while engaging in YTB Defendants'

illegal enterprise; and, (6) to the extent the Court finds it appropriate to certify an opt-out class,

all persons who properly execute and file a timely request for exclusion from the class.

175.     Plaintiff's Proposed Class consists of over 1,000 members and is so numerous

that joinder of all members is impracticable.

176.     The questions of law and fact are common to the class, including but not limited

to:

     a.     Whether Utah substantive law applies to Plaintiff's claims;

     b.     Whether YTB Defendants' business constitutes an illegal pyramid sales
             scheme as defined by U.C.A. 1953 § 76-6a-2(4));

     d.     Whether Plaintiff suffered actual damages as a result of YTB Defendants'
             violations of U.C.A. 1953 § 13-11-4(2)(n); and,

     e.     Whether Plaintiff's damages were proximately caused by YTB
             Defendants' violations of U.C.A. 1953 § 13-11-4(2)(n).

177.     The claims of Plaintiff's Proposed Class are typical in that all claims arise out of

the Utah Consumer Sales Practices Act and concern the same illegal business practices by YTB

Defendants.

178.     Plaintiff will fairly and adequately protect the interests of their Proposed Class.

179.     Certifying Plaintiff's class is an appropriate method for the fair and efficient

adjudication of this controversy.  Even if individual class members could afford to prosecute this

litigation alone, individual litigation magnifies the delay and expense to all parties and to the

court system in resolving the controversies at issue.

180.    Plaintiff does not anticipate difficulties in managing a class action.  In comparison to individual actions by class members, a class action presents fewer management difficulties and provides the benefits of unitary adjudication, economies of scale and comprehensive supervision by a single court applying the substantive law of the state in which it is situated.

181.    The damages incurred by Plaintiff and her Proposed Class exceed Defendants' assets.  Accordingly, adjudication with respect to individual class members would be dispositive of the interests of the other members not parties to the individual adjudications and would impair or impede their ability to protect their interest.

**C.    Choice of Law**

182.    Application of Utah law in the instant case will yield a different result than application of Illinois law.

183.    The needs of interstate systems mandate that the citizens of the many States be protected from multi-state corporations that engage in illegal pyramid schemes.

184.    The protective measures of the Illinois Consumer Fraud Act ("ICFA"), which prohibit illegal pyramid schemes, are generally limited to Illinois citizens, and the Federal District Court for the Southern District of Illinois has held that the ICFA does not apply to non-residents of Illinois in this case.

185.    It is the policy of the State of Utah that the Utah Consumer Sales Practices Act applies to Utah citizens.  The basic policy underlying Utah's anti-pyramid statute is the prohibition of illegal pyramid schemes that operate within the borders of the State.

186.    There are no justified exceptions for illegal pyramid schemes that exist under

No. 10-L-608

Illinois law that conflict with Utah law.

187.   Utah's prohibitions on illegal pyramid schemes are largely identical to those in the ICFA; thus, this Court will easily apply and determine the relevant issues in this case.

188.   Plaintiff was injured in Utah.

189.   Plaintiff participated in YTB Defendants' illegal scheme in Utah.  She communicated with Defendants electronically and telephonically from Utah.  And she sold and/or attempted to sell Defendants' products to Utah Citizens.

**D.   Class Allegations for the Defendant Class**

190.   Defendants J. Lloyd Tomer and J. Scott Tomer are the representatives of the mandatory Defendant Class.  This Defendant Class is defined as follows: all persons who made more than fifty thousand dollars in recruiting fees as a participant in YTB Defendants' illegal pyramid scheme.

191.   Excluded from the Defendant Class are: (1) Defendants' legal representatives, predecessors, successors and assigns; (2) the judge who is assigned to this case and his/her immediate family; and, (3) Plaintiffs' attorneys and their employees.

192.   The proposed Defendant Class is comprised of over a hundred participants in YTB Defendants' illegal scheme, the joinder of which is impracticable, and the members of the Class are so numerous that it is impractical to bring all of them before the Court in this action.

193.   Class treatment of the claims asserted herein will provide substantial benefit to both the parties and the court system. A well defined commonality of interests in the questions of law and fact affects Defendant and members of the proposed Defendant Class.

194.    There are common questions of law and fact applicable to the claims asserted against the Defendant Class.  These common questions include but are not limited to:

   a.    Whether the Proposed Defendant Class perpetrated an illegal pyramid sales scheme as prohibited by Utah law;

   b.    Whether Plaintiffs and their Proposed Class suffered damages as a result of the Defendant Class' perpetration of an illegal pyramid scheme; and,

   c.    Whether Plaintiffs and their Proposed Class' damages were proximately caused by the Defendant Class' perpetration of an illegal pyramid scheme or chain referral sales technique.

195.    These questions of law and fact predominate over any questions affecting only individual members of Plaintiff's Class.

196.    Defendants J. Lloyd Tomer and J. Scott Tomer will fairly and adequately protect the interests of the Defendant Class.

197.    Plaintiff anticipates that the defenses raised by Defendants J. Lloyd Tomer and J. Scott Tomer are typical to those of the Defendant Class, and these Defendants will fairly and adequately represent and protect the interests of the Proposed Class.  Defendant does not have any interests antagonistic to those of the Class in this litigation. Plaintiff anticipates that Defendants will be represented by attorneys at Armstrong Teasdale, LLP, which is a firm that is well-versed in business torts and class actions.  The questions of law and fact common to the members of the Defendant Class, some of which are set out above, predominate over any questions affecting only individual members of the Class.

198.    Certification of a Defendant Class is an appropriate method for the fair and efficient adjudication of the controversy.  Prosecuting separate actions against individual members of the Defendant Class would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants.  Different courts may come to different conclusions as to whether Defendants perpetrated an illegal pyramid scheme. Varying decisions would create incompatible standards for individuals and businesses in the forum State.

199.    Furthermore, prosecuting separate actions against individual members of the Defendant Class would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.  A ruling on behalf of one member of Plaintiff's Proposed Class against one member of the Defendant class may be in an amount in excess of the Defendant's assets, making it impossible for other members of the Plaintiff Class to recover.

200.    The damages incurred by Plaintiffs and their Proposed Class exceed the assets of the individual members of the Defendant Class.  Accordingly, adjudication with respect to individual class members would be dispositive of the interests of the other members not parties to the individual adjudications and would impair or impede their ability to protect their interest.

**E.    Cause of Action**

201.    Plaintiff files this action within two years of the date that she knew or had reason to know she had a cause of action against Defendants.

No. 10-L-608

202.     Plaintiff bought Defendant's business opportunity to give herself, her friends and her family inexpensive access to leisure travel.  She spent her money for the opportunity to perform personal services on a continuing basis in which she had not been previously engaged. Plaintiff had never run an online travel referral agency before.  The consumer transactions at issue in this Court are YTB Defendants' offer, solicitation, agreement and performance of a business opportunity that represented an illegal pyramid scheme.

203.     YTB Defendants' business constituted an illegal pyramid scheme because they sold a device or plan under which a person gives consideration in exchange for the right to receive compensation primarily derived from the recruitment of others into the scheme rather than from the sale of goods, services or property. U.C.A. 1953 § 76-6a-2(4); U.C.A. 1953 § 13-11-4(2)(n).

204.     Plaintiff and her Proposed Class suffered actual damages in excess of One Hundred Thousand Dollars ($100,000.00) as the proximate result of YTB Defendants' deceptive business practices.

**WHEREFORE**, Plaintiff and ask this Court to certify the Proposed Class; to appoint the undersigned as lead counsel for the Class; to declare YTB Defendants to be in violation of U.C.A. 1953 § 13-11-4(2)(n); to enter a judgment in excess of *$100,000.00* for actual and punitive damages against Conspiracy Defendants; to enter an Order permanently enjoining Conspiracy Defendants from continuing their illegal conduct; and for such other relief as the Court sees fit.

<u>**COUNT VII – UTAH COMMON LAW CIVIL CONSPIRACY –**</u>

## ALTERNATIVE THEORY

Plaintiff incorporates by reference and restates paragraphs 7-51, 53, 55-57 and 173-204 of this Complaint, and states in the alternative the following:

205.    YTB Defendants perpetrated a tortious and illegal pyramid scheme.  Conspiracy Defendants acted in concert with YTB Defendants by furthering their tortious and illegal objectives and actions.

206.    Conspiracy Defendants knowingly and voluntarily participated in a common scheme to unlawfully and tortiously perpetrate an illegal pyramid scheme.

207.    Conspiracy Defendants understood the general objectives of the tortious and illegal pyramid scheme, accepted them and agreed, either explicitly or implicitly, to further those objectives.  In other words, there was a meeting of the minds.  Conspiracy Defendants had a meeting of the minds with YTB Defendants on the object or course of action for the pyramid sales scheme.

208.    Plaintiffs further incorporate by reference and restate Paragraph 90 of this Complaint and all of its subparagraphs.   Conspiracy Defendants knowingly and voluntarily advanced and participated in YTB Defendants' illegal pyramid scheme by performing the non-exclusive list of actions listed in that Paragraph.  Thereby, the aforementioned Defendants illegally promoted participation in an illegal pyramid scheme in violation of U.C.A. 1953 § 13-11-4(2)(n).

209.    Conspiracy Defendants' actions in promoting participation in an illegal pyramid scheme were intentional torts that were aimed at the State of Utah.

No. 10-L-608

210.     Additional questions of law and fact are common to the class, including but not limited to:

a.     Whether Utah common law applies to Plaintiffs' conspiracy claims;

b.     Whether Conspiracy Defendants' actions constituted civil conspiracy; and,

c.     Whether Plaintiffs suffered damages as a result of Conspiracy Defendants' civil conspiracy.

211.     Plaintiffs' claims are typical to those of their Proposed Class because they arise out of Illinois common law and they concern the same illegal conspiracy actions of Conspiracy Defendants.

212.     Plaintiffs and their class suffered damages in excess of One Hundred Thousand Dollars ($100,000.00) as the proximate result of Conspiracy Defendants' civil conspiracy. Conspiracy Defendants knew that their actions would likely cause harm in the State of Utah.

**WHEREFORE**, Plaintiff and ask this Court to certify the Proposed Class; to appoint the undersigned as lead counsel for the Class; to enter a judgment in excess of ***$100,000.00*** for actual and punitive damages against Conspiracy Defendants; to enter an Order permanently enjoining Conspiracy Defendants from continuing their illegal conduct; and for such other relief as the Court sees fit.

## <u>COUNT VIII – RESPONDENTS IN DISCOVERY</u>

Come now plaintiffs, and designate **Armstrong Teasdale, LLP, a foreign corporation; James G. Martin, Jay Summerville and Brian Edwards Kaveney,** as Respondents in Discovery because plaintiffs believe these defendants have information essential to the

No. 10-L-608

determination of who should properly be named as additional defendants in this cause of action.

Respectfully Submitted,

Attorneys for Plaintiffs

Montroy Law Offices, LLC,
Christian G. Montroy IL Bar #6283566
412 Missouri Avenue
East St. Louis, IL 62201
Phone: (618) 274-0434
Fax:    (618) 274-8369
cmontroy@montroylaw.com

Witzel Kanzler Dummit
  Kenney & Kanzler, LLC
Jay L. Kanzler Jr. IL Bar #6208995
jaykanzler@wkllc.com
Brian J. Massimino IL Bar #6281974
bmassimino@wkllc.com
2001 S. Big Bend Boulevard
St. Louis, MO 63117
Phone: (314) 645-5367
Fax:    (314) 645-5387