IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN STULL, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>YTB INTERNATIONAL, INC., et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) CIVIL NO. 10-600-GPM<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

**MURPHY, District Judge:**

### I. INTRODUCTION

Plaintiffs John Stull, Randall Quick, LaShonda Stiff, Faye Morrison, Jeff Hartman, Polly Hartman, JPH Development, Inc. ("JPH"), Courtney Speed, Kwame Thompson, Jorge Gonzalez, Nikky Shotwell, and Grace Perry bring this suit as a putative class action for allegedly deceptive and unfair trade practices by Defendants YTB International, Inc. ("YTB"), YourTravelBiz.com, Inc. ("YTB.com"), YTB Travel Network, Inc. ("YTBTN"), YTB Travel Network of Illinois, Inc. ("YTBTNI"), J. Lloyd Tomer, J. Scott Tomer, J. Kim Sorensen, Andrew Cauthen, and Robert Van Patten. YTB International, YTB.com, YTBTN, and YTBTNI are affiliated corporations based in Illinois that are engaged in the business of marketing online travel agencies ("OTAs") to persons interested in setting up home travel businesses. Lloyd Tomer, Scott Tomer, and Van Patten are corporate officers of YTB International. Sorensen is a corporate officer of YTB International and YTBTN; additionally, Sorensen is a corporate officer of

Defendant CCMP, Inc. ("CCMP").  Cauthen is a corporate officer of YTB.com.[1] Defendants Meridian Land Company ("Meridian"), Winfield Development, LLC ("Winfield LLC"), CCMP, Timothy Kaiser, M.D., and Clay O. Winfield are alleged co-conspirators of the YTB Defendants.[2] This case was filed originally in the Circuit Court of the Third Judicial Circuit, Madison County, Illinois, and is before this Court on removal; as the Court found in a prior order in this case denying remand of the case to state court, federal subject matter jurisdiction is proper in this case on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.). *See Stull v. YTB Int'l, Inc.*, Civil No. 10-600-GPM, 2010 WL 4008153, at *4 (S.D. Ill. Oct. 13, 2010).

As will be discussed in more detail presently, this case is the successor to an earlier action in this forum, *Morrison v. YTB International, Inc.*, Civil No. 08-565-GPM (S.D. Ill. dismissed May 26, 2010), in the course of which the Court set out the nature of Plaintiffs' claims at some length. *See, e.g., Morrison v. YTB Int'l, Inc.*, Civil Nos. 08-565-GPM, 08-579-GPM, 2010

---

1. Hereinafter in this Order the Court will refer to YTB International, YTB.com, YTBTN, YTBTNI, Lloyd Tomer, Scott Tomer, Sorensen, Van Patten, and Cauthen collectively as "the YTB Defendants" whenever possible.

2. Hereinafter in this Order the Court will refer to Meridian, Winfield LLC, CCMP, Kaiser, and Winfield collectively as "the Conspiracy Defendants" whenever possible. It appears from the allegations of the operative complaint in this case that Kaiser and Winfield are corporate officers of YTB International. However, Plaintiffs' theory of liability against Kaiser and Winfield is premised upon Kaiser's position as a corporate officer of Meridian and Winfield's position as a corporate officer of Winfield LLC rather than upon the positions that Kaiser and Winfield hold as officers of YTB International. Thus, when the Court refers to "the YTB Defendants," this term should not be understood to include Kaiser and Winfield. Similarly, although as already has been noted Sorensen is a corporate officer of CCMP, when the Court refers to "the Conspiracy Defendants," this term should not be understood to include Sorensen.

WL 1558712, at **1-2 (S.D. Ill. Apr. 19, 2010); *Morrison v. YTB Int'l, Inc.*, 641 F. Supp. 2d 768, 771-73 (S.D. Ill. 2009). Accordingly, the Court will merely sketch the nature of those claims here. Plaintiffs allege, in essence, that the YTB Defendants operate what amounts to a pyramid scheme. As already has been noted, this case concerns sales of OTAs, which the YTB Defendants market to Referring Travel Agents ("RTAs") through a network of Independent Marketing Representatives ("IMRs"). An RTA pays the YTB Defendants an initial fee of approximately $450 for an OTA, followed by payments of about $50 per month thereafter. In turn, the YTB Defendants pay a marketing commission to each IMR that refers an RTA to them to buy an OTA both for the RTA and for any new agents that the RTA is able to recruit. The YTB Defendants also provide incentives for IMRs to become RTAs by, for example, reimbursing RTA fees to IMRs who sell a certain number of OTAs. Thus, an IMR/RTA who referred to the YTB Defendants three persons that purchased OTAs would qualify for reimbursement of his or her initial RTA fee. Likewise, an IMR/RTA who sold six OTAs would qualify for reimbursement of his or her monthly RTA fee for every month during which the sold OTAs remained active. As alleged by Plaintiffs, then, the object of the YTB Defendants' business model is to induce IMRs through commissions and rebates to become RTAs and to sign up new RTAs, who then are offered the same inducements to sign up new RTAs in their turn. Plaintiffs allege that the YTB Defendants have garnered about a $500 million in revenues marketing OTAs, netting $122 million in 2008 alone, an amount equal to approximately 75% of the YTB Defendants' net revenue that year.

Plaintiffs allege that they are former RTAs and IMRs. Plaintiffs Stull, Quick, and Stiff, who are Illinois citizens, assert claims for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.*, and civil conspiracy. Plaintiffs Morrison,

Jeff and Polly Hartman, JPH, and Speed, who are Missouri citizens, assert claims for violations of the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. 407.010 *et seq.*, and civil conspiracy. Plaintiffs Thompson, Gonzalez, and Shotwell, who are citizens of Georgia, assert claims for violations of the Georgia Uniform Deceptive Trade Practices Act ("GUDTPA"), Ga. Code Ann. § 10-1-370 *et seq.*, and civil conspiracy. Finally, Plaintiff Perry, a citizen of Utah, asserts claims for violations of the Utah Consumer Sales Practices Act ("UCSPA"), Utah Code Ann. § 13-11-1 *et seq.*, and civil conspiracy. Plaintiffs seek certification of both plaintiff and defendant classes. Currently this matter is before the Court on a motion to dismiss Plaintiffs' operative complaint for failure to state a claim upon which relief can be granted brought by YTB, YTB.com, YTBTN, YTBTNI, Sorensen, Cauthen, Van Patten, and CCMP (Doc. 35). Lloyd Tomer, Scott Tomer, Meridian, Winfield LLC, Winfield, and Kaiser have joined in the motion to dismiss (Doc. 42). The motion to dismiss has been fully briefed, and the Court rules as follows.

## II. ANALYSIS

### A.  Legal Standard

As an initial matter the Court notes the legal standard under which the instant motion to dismiss must be evaluated. In considering a motion to dismiss for failure to state a claim upon which relief can be granted, the Court accepts all well-pleaded allegations in a plaintiff's complaint as true. *See* Fed. R. Civ. P. 12(b)(6); *Cleveland v. Rotman*, 297 F.3d 569, 571 (7th Cir. 2002); *S.C. Johnson & Son, Inc. v. Buske*, Civil No. 09-286-GPM, 2009 WL 3010833, at *8 (S.D. Ill. Sept. 17, 2009). The purpose of a Rule 12(b)(6) motion is to decide the adequacy of the complaint, not to determine the merits of the case. *See Gibson v. City of*

*Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990); *Heinze v. Southern Illinois Healthcare*, Civil No. 08-672-GPM, 2010 WL 276722, at *2 (S.D. Ill. Jan. 19, 2010). A complaint should not be dismissed under Rule 12(b)(6) unless it either fails to provide adequate notice – as has been required consistently under Rule 8 of the Federal Rules of Civil Procedure – or does not contain "enough facts to state a claim to relief that is plausible on its face," that is, the claim has not been "nudged . . . across the line from conceivable to plausible[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *See also Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007); *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). "A complaint need not 'allege all, or *any*, of the facts logically entailed by the claim,' and it certainly need not include evidence." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998)) (emphasis in original). Nevertheless, "while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the . . . grounds . . . of his . . . entitlement to relief . . . requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *James v. Illinois Sexually Dangerous Persons Act*, Civil No. 09-40-GPM, 2009 WL 2567910, at *2 (S.D. Ill. Aug. 19, 2009) (quoting *Bell Atl. Corp.*, 550 U.S. at 555) (brackets omitted). With this standard in mind, the Court turns to consideration of the instant motion to dismiss.[3]

---

3. It should be pointed out as well that although, as already has been discussed, Plaintiffs seek certification of both plaintiff and defendant classes in this case, at this juncture the Court's concern is solely with whether, as individuals, the named Plaintiffs in this case have stated a claim upon which relief can be granted. *See Hall v. Brown*, Civil No. 10–724–GPM, 2011 WL 1403036, at *1 n.1 (S.D. Ill. Apr. 13, 2011) (quoting *Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 616 (7th Cir. 2002)) ("Until certification there is no class action but merely the prospect of one; the only action is the suit by the named plaintiff.") (brackets omitted).

B. **Claim Preclusion**

The Court takes up first the issue of whether res judicata or, as it is more commonly known these days, claim preclusion bars the claims of Plaintiffs Morrison, Stull, Thompson, Jeff and Polly Hartman, JPH, Perry, and Speed.[4] In the earlier *Morrison v. YTB International* case, which, as already has been noted, is the predecessor to this action, Plaintiffs Morrison, Stull, Thompson, Jeff and Polly Hartman, JPH, Perry, and Speed asserted claims under the ICFA against the YTB Defendants and the Conspiracy Defendants, and sought certification of a nationwide class of former IMRs who are owed un-reimbursed RTA fees. *See Morrison*, 641 F. Supp. 2d at 773-74. In *Morrison*, the Court, applying *Avery v. State Farm Mutual Automobile Insurance Co.*, 835 N.E.2d 801 (Ill. 2005), ruled that Morrison, Thompson, Jeff and Polly Hartman, JPH, Perry, and Speed, as non-residents of Illinois, could not invoke the ICFA under the circumstances of the case, and dismissed the claims of the non-Illinois plaintiffs. *See* 641 F. Supp. 2d at 775-76, 782. After Morrison, Stull, Thompson, Jeff and Polly Hartman, JPH, Perry, and Speed amended their complaint to re-allege their claims under the ICFA, the Court again dismissed the claims of the non-Illinois Plaintiffs, this time with prejudice. *See Morrison v. YTB Int'l, Inc.*, Civil Nos. 08–565–GPM, 08–579–GPM, 2010 WL 1558712, at *12 (S.D. Ill. Apr. 19, 2010). A final judgment was entered in *Morrison* on May 26, 2010. The claim-preclusive effect of a federal judgment is tested under federal standards. *See EEOC v. Chernin, Inc.*, 10 F.3d 1286, 1289 n.4 (7th Cir. 1993); *In re Energy Coop., Inc.*, 814 F.2d 1226, 1230 (7th Cir. 1987). Claim preclusion

---

4. "The Court believes that the term claim preclusion is more descriptive and accurate than the term res judicata" *Carr v. Tillery*, 2010 WL 4781127, at *3 n.2 (S.D. Ill. Sept. 20, 2010) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984)) (internal citation omitted).

applies to bar a subsequent suit in federal court when the following conditions exist: (1) an identity of the causes of action; (2) an identity of the parties or their privies; and (3) a final judgment on the merits. *See Kratville v. Runyon*, 90 F.3d 195, 197 (7th Cir. 1996) (citing *Golden v. Barenborg*, 53 F.3d 866, 868 (7th Cir. 1995)). In this instance, the third element, a final judgment on the merits, is lacking, as the Court's judgment in the *Morrison* case was vacated on appeal by the United States Court of Appeals for the Seventh Circuit. *See Morrison v. YTB Int'l, Inc.*, No. 10-2529, 2011 WL 3132398 (7th Cir. July 27, 2011). The general common-law rule governing the effect of reversal on a judgment is that, after reversal, "[the] decree [is] no longer of any force or effect. The parties [are] in precisely the same situation as though no decree had been entered." *Kaplan v. Joseph*, 125 F.2d 602, 606 (7th Cir. 1942). *See also Keller v. Hall*, 111 F.2d 129, 131 (9th Cir. 1940) (quoting *Butler v. Eaton*, 141 U.S. 240, 244 (1891)) (a judgment, "after it was reversed, was 'without any validity, force, or effect.'"). As Justice Story explained, "[a]t common law, if a plaintiff obtain a judgment in an inferior tribunal, which is reversed in the appellate court, it is very clear, that the reversal operates no further, than to nullify the original judgment. In other respects, the parties are precisely in the same situation, as to their rights and remedies touching the matter in controversy, as if no such judgment had ever existed." *Harvey v. Richards*, 11 F. Cas. 740, 745 (C.C.D. Mass. 1814) (No. 6,182). *See also* 36 C.J.S. Federal Courts § 712 (1955 & Supp. 2011) ("The effect of a general and unqualified reversal of a judgment, order, or decree by [a reviewing court] is to nullify it completely and to leave the cause standing as if it had never been rendered[.]") (collecting cases). Here the Court's judgment in *Morrison* has been reversed, and therefore that judgment has no preclusive effect as to the claims Morrison, Thompson, Jeff and Polly Hartman, JPH, Perry, and Speed.

C.  **Validity of Plaintiffs' Claims**

The YTB Defendants contend that they are not operating an illegal pyramid scheme or chain referral sales technique because, under their business model, an IMR/RTA is compensated for selling OTAs, not recruiting new participants into the scheme. Accordingly, the Court turns to the matter of whether Plaintiffs have stated a claim for relief. The ICFA provides, in relevant part, that "[i]t is an unlawful practice within the meaning of this act for any person, by himself or through others, to sell, offer to sell, or attempt to sell the right to participate in a pyramid sales scheme." 815 ILCS 505/2A(2). The statute defines a pyramid sales scheme as:

> [A]ny plan or operation whereby a person in exchange for money or other thing of value acquires the opportunity to receive a benefit or thing of value, which is primarily based upon the inducement of additional persons by himself or others, regardless of number to participate in the same plan or operation and is not primarily contingent on the volume or quantity of goods, services, or other property sold or distributed or to be sold or distributed to persons for purposes of resale to consumers.

815 ILCS 505/1(g). *See also People ex rel. Hartigan v. Dynasty Sys. Corp.*, 471 N.E.2d 236, 240 (Ill. App. Ct. 1984).[5] Additionally, the ICFA prohibits the use of a "chain referral sales technique,"

---

5.  It should be pointed out that the consumer protection laws invoked by all of the Plaintiffs are very similar. For example, under the MMPA, which is invoked by Morrison, Jeff and Polly Hartman, JPH, and Speed,

> The term "pyramid sales scheme" includes any plan or operation for the sale or distribution of goods, services or other property wherein a person for a consideration acquires the opportunity to receive a pecuniary benefit, which is not primarily contingent on the volume or quantity of goods, services, or other property sold or distributed or to be sold or distributed to persons for purposes of resale to consumers, and is based upon the inducement of additional persons, by himself or herself or others, regardless of number, to participate in the same plan or operation[.]

Mo. Rev. Stat. § 407.400(5). The MMPA provides further that, "[n]o person shall, directly or through the use of agents or intermediaries, in connection with the sale or distribution of goods, service, or other property, sell, offer or attempt to sell a participation or the right to participate in a

stating, in relevant part:

> The use or employment of any chain referral sales technique, plan, arrangement or agreement whereby the buyer is induced to purchase merchandise upon the seller's promise or representation that if buyer will furnish seller names of other prospective buyers or like or identical merchandise that seller will contact the named prospective buyers and buyer will receive a reduction in the purchase price by means of a cash rebate, commission, credit toward balance due or any other consideration, which rebate, commission, credit or other consideration is contingent upon seller's ability to sell like or identical merchandise to the named prospective buyers, is declared to be an unlawful practice within the meaning of this Act.

815 ILCS 505/2A(1). *See also Scentura Creations, Inc. v. Long*, 756 N.E.2d 451, 457-58 (Ill. App. Ct. 2001).

The meaning of the provisions of the statutes governing pyramid sales schemes invoked by Plaintiffs have not been the subject of extensive judicial construction, but the Court finds guidance in the opinions of the Federal Trade Commission ("FTC") and federal courts interpreting the Federal

---

pyramid sales scheme." Mo. Rev. Stat. § 407.405. Under the GUDTPA, which is invoked by Thompson, Gonzalez, and Shotwell,

> (a) No multilevel distribution company or participant in its marketing program shall:
> (1) Operate or, directly or indirectly, participate in the operation of any multilevel marketing program wherein the financial gains to the participants are primarily dependent upon the continued, successive recruitment of other participants and where sales to nonparticipants are not required as a condition precedent to realization of such financial gains; [or]
> (2) Offer to pay, pay, or authorize the payment of any finder's fee, bonus, refund, override, commission, cross-commission, dividend, or other consideration to any participant in a multilevel marketing program solely for the solicitation or recruitment of other participants therein[.]

Ga. Code Ann. § 10-1-411. Finally, under the UCSPA, which is invoked by Perry, "a supplier commits a deceptive act or practice if the supplier knowingly or intentionally . . . promotes, offers, or grants participation in a pyramid scheme[.]" Utah Code Ann § 13-11-4(n). Under the statute, a "'[p]yramid scheme' means any sales device or plan under which a person gives consideration to another person in exchange for compensation or the right to receive compensation which is derived primarily from the introduction of other persons into the sales device or plan rather than from the sale of goods, services, or other property." Utah Code Ann. § 76-6a-2.

Trade Commission Act ("FTCA"), 15 U.S.C. § 41 *et seq*. *See, e.g.*, 815 ILCS 505/2 (providing that courts may look to opinions of the FTC in construing the ICFA); *People ex rel. Hartigan v. Unimax Inc.*, 523 N.E.2d 26, 29 (Ill. App. Ct. 1988) (same). In general, illegal pyramid schemes "are characterized by the payment by participants of money to the company in return for which they receive (1) the right to sell a product and (2) the right to receive in return for recruiting other participants into the program rewards which are unrelated to sale of the product to ultimate users." *Webster v. Omnitrition Int'l, Inc.*, 79 F.3d 776, 781 (9th Cir. 1996) (quoting *In re Koscot Interplanetary, Inc.*, 86 F.T.C. 1106, 1181 (1975)) (emphasis omitted). Another characteristic of an unlawful pyramid scheme is that such schemes tend to saturate the market of potential participants to the point where it is unrealistic to expect that such a large number of individuals will become involved and the pyramid must therefore eventually collapse. A legitimate multi-level marketing ("MLM") scheme does not have such a propensity for saturation. *See, e.g., United States v. Gold Unlimited, Inc.*, 177 F.3d 472, 481 (6th Cir. 1999) ("A pyramid is improper only if it presents a danger of market saturation – that is, only if at some point, persons on the lowest tier of the structure will not be able to find new recruits."); *Ger-Ro-Mar, Inc. v. FTC*, 518 F.2d 33, 38-39 (2d Cir. 1975) (substantial evidence supported a finding of the FTC that claims in a lingerie manufacturer's promotional literature and material for recruiting distributors that ascension up the marketing ladder was rapid, that all distributors had the potential of making large profits, and that the supply of available participants was inexhaustible were deceptive).

A lawful MLM program is distinguishable from an illegal pyramid scheme in the sense that the "primary purpose" of the enterprise and its associated individuals is to sell or market an end-product with end-consumers, and not to reward associated individuals for the recruitment of

more marketers or "associates." *In re Amway Corp.*, 93 F.T.C. 618, 716 (1979) (finding that a MLM program was not an illegal pyramid scheme where so-called "sponsors" did not make money from their recruits' efforts until a newly-recruited distributor began to make wholesale purchases from his sponsor and sales to consumers). As a sister federal court explained,

> A legitimate [MLM] . . . firm includes a system of distributing products or services in which each participant earns income from sales of a product to his or her downline and also from sales to the public. The operative question is whether the revenues from sales of the goods and services to consumers is sufficient to cover the production costs or costs of the goods sold, the various marketing expenses, and the promised rewards for recruiting new participants. If the revenue from such sales is sufficient, there is no structural certainty of collapse.

*FTC v. Five-Star Auto Club*, 97 F. Supp. 2d 502, 531 (S.D.N.Y. 2000). Whether a MLM plan operates as illegal pyramid scheme is determined by how it functions in practice. *See Omnitrition*, 79 F.3d at 783; *Amway*, 93 F.T.C. at 716.

Here Plaintiffs allege that an IMR/RTA is induced to join the YTB Defendants' scheme by promises of earning thousands of dollars through a part-time, home-based business. In reality, Plaintiffs allege, an IMR/RTA typically earns little or, more commonly, nothing from sales of travel, and instead whatever small sums an IMR/RTA earns are derived from inducing other people to join the scheme. According to Plaintiffs, "[i]n 2007 alone, OTA sales and monthly fees accounted for 73%, or $103 million, of YTB Defendants' total revenue of $141 million. Travel-related sales accounted for less than 10% of YTB Defendants' total revenues in 2007. In 2008, YTB Defendants' net revenue amounted to $162 million, $122 million of which was from the sale and maintenance of OTAs." Doc. 10 (Amended Complaint) at 12 ¶ 44. Thus, Plaintiffs allege, the YTB Defendants "derived the lion's share of their revenue – $122 million in 2008 (75% of their total revenue) – by

using [IMRs] to recruit [RTAs] to buy [OTAs] from YTB Defendants." *Id*. at 3 ¶ 2. According to Plaintiffs, "the only way Plaintiffs and their class could make a net profit was by referring persons to YTB Defendants who purchased OTAs. In their roles as IMRs, Plaintiffs did not sell OTAs or any other products or services." *Id*. at 12 ¶ 45. Importantly, it appears from the allegations of the complaint that IMRs/RTAs were compensated solely for bringing new people into the YTB Defendants' scheme, regardless of whether any travel was sold or not. In sum, the complaint adequately alleges that the YTB Defendants are operating an unlawful pyramid scheme. The fact that an OTA may have value, that is, an IMR might actually do some travel-related business, instead of merely recruiting RTAs, does not mean that the YTB Defendants are not operating an illegal pyramid scheme. *See FTC v. Skybiz.com, Inc.*, No. 01-CV-396-K(E), 2001 WL 1673645, at *10 (N.D. Okla. Aug. 31, 2001) (noting that "whether SkyBiz's product has inherent value is of little consequence" in determining whether the defendant was operating an illegal pyramid scheme). Likewise irrelevant is the fact that IMRs/RTAs are compensated incident to sales of OTAs. *See Whole Living, Inc. v. Tolman*, 344 F. Supp. 2d 739, 745 (D. Utah 2004) (the fact that a defendant makes some retail sales is not dispositive as to the existence of an unlawful pyramid scheme). Even assuming the evidence ultimately does not show that the YTB Defendants are engaged in a pyramid scheme, there obviously is a "danger of . . . recruitment focus" in the YTB Defendants' scheme. *Omnitrition*, 79 F.3d at 782 (citing *Koscot*, 86 F.T.C. at 1181). Accordingly, the Court finds that Plaintiffs adequately have alleged that the YTB Defendants are engaged in the operation of an illegal pyramid scheme.[6]

---

6. Although the Plaintiffs have stated a claim for operation of an illegal pyramid scheme, the allegations of Plaintiffs' operative complaint do not support an inference that the YTB Defendants are employing an illegal chain referral sales technique, and therefore Plaintiffs' claim under 815

**D.     Consolidation**

As a final matter, the Court takes up sua sponte the question of consolidation of the instant case with the *Morrison* case. Rule 42 of the Federal Rules of Civil Procedure provides, in pertinent part, "[i]f actions before the court involve a common question of law or fact, the court may . . . consolidate the actions[.]" Fed. R. Civ. P. 42(a)(2). The decision regarding consolidation is committed to a court's discretion. *See United States v. Knauer*, 149 F.2d 519, 520 (7th Cir. 1945); *Henderson v. National R.R. Passenger Corp.*, 118 F.R.D. 440, 441 (N.D. Ill. 1987). Also, a court may order consolidation sua sponte and, if need be, over the objections of parties. *See Connecticut Gen. Life Ins. Co. v. Sun Life Assurance Co. of Canada*, 210 F.3d 771, 774 (7th Cir. 2000); *Smith v. Northeastern Ill. Univ.*, No. 98 C 3555, 2002 WL 377725, at *6 (N.D. Ill. Feb. 28, 2002); *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, Nos. 91 C 6103, 91 C 7362, 1992 WL 159334, at *6 (N.D. Ill. June 30, 1992); 9 Charles A. Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, Federal Practice and Procedure § 2383 (3d ed. 1998 & Supp.2011) (collecting cases). In this instance this case and the *Morrison* case clearly present common questions of law and fact; both cases involve largely the same parties and the same issues of law and fact, specifically, whether the YTB Defendants, with the assistance of the Conspiracy Defendants, are operating an unlawful pyramid scheme. Judicial economy obviously would be served best by

---

ILCS 505/2A(1) will be dismissed. Here perhaps is the place to note that, in their motion to dismiss, the YTB Defendants argue also that the Court should abstain from the exercise of jurisdiction in this case pursuant to the doctrine of *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), in favor of certain proceedings pending in another court between the YTB Defendants and the Illinois Attorney General. However, the Court is advised by counsel for the YTB Defendants that those proceedings now have been settled, and therefore the Court does not consider the issue of abstention. Finally, because Plaintiffs have stated a claim for relief as to whether the YTB Defendants, with the assistance of the Conspiracy Defendants, are operating an illegal pyramid scheme, the Court declines to dismiss Plaintiffs' claims for civil conspiracy.

consolidating this case with the *Morrison* case; in this way, duplicative and possibly inconsistent rulings as to the same issues will be avoided. The parties have not moved for consolidation of this case with the *Morrison* case, but neither is there any evidence that they oppose consolidation. Accordingly, the Court will order this case to be consolidated with the *Morrison* case for all purposes.

### III. CONCLUSION

It is hereby **ORDERED** that the motion to dismiss brought by Defendants YTB, YTB.com, YTBTN, YTBTNI, Sorensen, Cauthen, Van Patten, and CCMP (Doc. 35) and joined in by Defendants Lloyd Tomer, Scott Tomer, Meridian, Winfield LLC, Winfield, and Kaiser (Doc. 42) is **GRANTED in part** and **DENIED in part**. It is hereby **ORDERED** that Plaintiffs' claim that Defendants are operating a chain referral sales technique is **DISMISSED**; the remainder of the motion to dismiss is **DENIED**. It is **further ORDERED** that, pursuant to Rule 42(a)(2) of the Federal Rules of Civil Procedure, this case is hereby **CONSOLIDATED** for all purposes with *Morrison v. YTB International, Inc.*, Civil No. 08-565-GPM (S.D. Ill. filed Aug. 8, 2008). Civil No. 08-565-GPM shall be the lead case, and all further filings in the consolidated cases shall be in Civil No. 08-565-GPM.

**IT IS SO ORDERED.**

DATED: September 26, 2011

/s/ G. Patrick Murphy
G. PATRICK MURPHY
United States District Judge